(No. 5814. May 10, 1932.)

A. MEYERS, PERCY F. FREEMAN, S. A. MATTHIEU, RALPH C. ZIMMERMAN and LEON W. CURTISS, Respondents, v. THE CITY OF IDAHO FALLS, a Municipal Corporation, and ALVINA M. WILSON, Treasurer of the City of Idaho Falls, Respondents; AMERICAN NATIONAL BANK, a Corporation, M. L. HOLZMAN and E. H. CONKLING, Intervenors and Appellants.

[11 Pac. (2d) 626.]

Paul T. Peterson and J. Wesley Holden, for Appellants.

Otto E. McCutcheon and Ralph L. Albaugh, for Respondents.

LEEPER, J.—During the year 1920 and thereabouts the City of Idaho Falls created and organized eight local improvement districts, five of them under the provisions of article 6, chapter 163, of the Idaho Compiled Statutes, for street improvements, and three of them under the provisions of chapter 171, Idaho Compiled Statutes, for sewer

improvements. Each of the districts was duly and regularly organized as required by law, the improvements were made and bonds issued to pay therefor. Each series of bonds is substantially identical in form, the bonds being due ten years from date and numbered serially from one upward. The bonds were in the course of time disposed of to various persons. The City of Idaho Falls thereafter proceeded to make a levy upon the property in each district sufficient on its face to retire all of the bonds issued against each district within ten years, together with interest thereon, according to their terms. The interest on all of the bonds has been kept up, and as time went on certain bonds of each issue were called and paid in their numerical order whenever sufficient funds were accumulated. In each district default has been made in the payment of the special assessments due on certain parcels of the less valuable property, whereby the total fund paid in is considerably less than the face value of the bonds issued against the district. As to practically all of this defaulted property, similar default was made in the payment of general taxes and title thereto has passed to the county, whereby the lien of the bonds has been divested and the security of the bondholders to that extent diminished. All of the unpaid bonds in each of the eight districts are now past due. There are now in the hands of the city treasurer of the City of Idaho Falls certain funds, representing the final collection of assessments in each district, which aggregate some $42,000. This money as apportioned to the various funds is the final payment which will be made in each by the taxpayers therein, and all property as to which assessments have been paid in full are relieved and discharged of any further liability. On account of the non-payment of a part of the assessments, the .funds on hand for each district are insufficient by a large margin to cover all of the unpaid bonds, and inasmuch as the delinquent lands have been lost as security on account of the paramount lien for general taxes, it is clear that the remaining bonds cannot be paid except in so far as the funds on hand

in each district will go. The question immediately before us for decision is this: Shall the outstanding bonds of each series be paid in numerical order until each particular fund is exhausted, or shall the fund on hand be prorated among all of them?

The matter is presented to us in the form of an action wherein plaintiffs, owners of the unpaid bonds aforesaid, pray for the issuance of a writ of mandate directed to the City of Idaho Falls and its treasurer, requiring the payment to them of their *pro rata* share of each of the aforesaid funds. An alternative writ was issued, and the defendants were temporarily restrained from otherwise disposing of the funds. The defendants denied generally. The American National Bank, M. L. Holzman and E. H. Conkling thereafter filed complaints in intervention wherein they set forth that they were the owners of bonds in certain of the districts which were of a lesser serial number than those owned by plaintiffs, and prayed that the city treasurer be *permitted* to pay their bonds in full according to their numerical priority after the payment of interest on all of the bonds. The intervention was allowed, the issues were framed by proper pleadings, and the facts were stipulated. The lower court entered judgment in favor of the plaintiffs, directing the city treasurer to pay their bonds *pro rata* with all the others outstanding and unpaid in each respective district out of the fund applicable thereto, and further ordered that the alternative writ of mandate and the temporary injunction theretofore issued be made permanent.

█ Special improvement districts within cities and villages of Idaho which operate under the general municipal laws are purely creatures of the statute. It is unnecessary to enter into a detailed discussion of the local improvement statutes, except to suggest that the various street improvement districts with which we are concerned were created under the provisions of article 6, chapter 163, of the Idaho Compiled Statutes, and the sewer districts were created under the provisions of. chapter 171 of the Idaho Compiled Statutes. The two statutes are substantially the same,

and no distinction need be made between them for the purposes of this opinion.

The ordinances creating the improvement districts are passed after certain preliminary proceedings, for street improvements under C. S., sec. 4005, for sewer improvements under C. S., sec. 4132. In substance these ordinances define and describe the property to be included within the district, direct the particular improvement to be made, and provide for the assessment of the cost thereof *pro rata* upon the property included. This is the sole instrument whereby improvement districts are created. Thereafter, and after the work is completed, an assessment-roll is prepared and the assessments are levied against the respective parcels of land. (C. S., secs. 4008, 4134.) After notice this assessment-roll is confirmed and thenceforward the assessments become fixed liens against the respective parcels (C. S., secs. 4010, 4136), prior to all other liens except general taxes.

Under the provisions of C. S., secs. 4014 et seq., and 4142 et seq., the mayor and city council may in their discretion, instead of levying the entire cost of the improvement at one time, provide for the payment thereof by instalments, and for such instalments may issue, *"in the name of the municipality, improvement bonds of the district,"* which shall by their terms be made payable on or before a date not to exceed ten years from the date of issue. By C. S., secs. 4017 and 4145, the city officials are required to levy special assessments each year against the parcels of land within the district *"sufficient to redeem the instalment of such bonds next thereafter maturing,"* together with *"interest due on said bonds at the maturity of the next instalment."* The law specifically provides that these assessments are to be levied and collected in the same manner as may be provided by law for the levy and collection of special assessments where no bonds are issued.

The form of the bonds issued under these provisions is prescribed by C. S., secs. 4018 and 4144, and generally it is provided that the bonds shall be numbered from one upward consecutively, and shall be signed, together with the

coupons, by the city officers. The only recitals which the statute makes mandatory are those providing that the bonds are payable only out of the local improvement fund, and that the municipality is not liable therefor. (C. S., secs. 4018, 4026, 4144 and 4151.)

Under the statute the municipality had the power to levy the entire cost of each improvement in one assessment. Its officers chose, however, to issue bonds for a ten-year period. The bonds succeed to the lien of the original assessment, and the assessments thereafter levied and collected are a "trust fund pledged by law for the payment of the bonds." (*Jewell v. City of Superior*, 135 Fed. 19.) The only duty with which the city officials are charged is the levying of assessments and payment of the funds collected to the bondholders (*Moore v. City of Nampa*, 18 Fed. (2d) 860), and there is no contention that the city has not fulfilled its obligation in this connection. The deficiencies which exist have arisen because the owners of certain parcels of property within each district failed to pay their assessments and general taxes, and the property reverted to the county, freed of the liens of the bonds. It follows, as hereinbefore stated, that the funds collected by the city by means of special assessments are trust funds, pledged to the payment of the bonds issued against each district. Public improvement bonds are instrumentalities for the spreading of local improvement assessments over a period of years, and the maintenance of the lien therefor against the property benefited. Assessments collected are public funds, impressed with a trust in favor of the bondholders. (*Jewell v. City of Superior, supra.*)

The statutes which prescribe the manner of payment of these bonds are C. S., secs. 4021 and 4149. C. S., sec. 4021, provides:

"The funds arising by such assessment shall be applied solely toward the redemption of said bonds.

"The city treasurer or other authorized officer of such municipality shall pay the interest on the bonds authorized to be issued by this article out of the respective local im-

provement funds from which they are payable. Whenever there shall be sufficient money in any local improvement fund against which bonds have been issued under the provisions of this article, over and above the amount sufficient for the payment of interest on all unpaid bonds, to pay the principal of one or more bonds, the treasurer shall call in and pay such bonds, which shall be called and paid in their numerical order: Provided, That such call shall be made by publication in the city official newspaper on the day following the delinquency of any installment of the assessment or as soon thereafter as practicable and shall state that bonds No. —— (giving the serial number or numbers of the bonds called) will be paid on the day that the next interest coupons on said bonds shall become due, and interest upon said bonds shall cease upon such date.''

C. S., sec. 4149, is substantially the same as the foregoing.

The intervenors assert that these statutes are mandatory and that the city treasurer is by the terms thereof required to call and pay outstanding bonds in each district in order of their numerical priority, without regard to other provisions of the law.

Other statutes which are pertinent are C. S., secs. 4023 and 4150, both substantially identical. C. S., sec. 4023, provides:

''Said bonds, when issued to the contractor constructing the improvements in payment thereof, or when sold as above provided, shall transfer to the contractor, or other owner or holder, all the right and interest of such municipality in and with respect to every such assessment, and the lien thereby created against the property of such owners assessed as shall not have availed themselves of the provisions of this article in regard to the redemption of their property as aforesaid, shall authorize said contractor and his assigns, and the owners and holders of said bonds to receive, sue for and collect or have collected such assessment embraced in any such bond or through any of the methods provided by law for the collection of assessments for local improvements.

"And if the municipality shall fail, neglect or refuse to pay such bonds or to promptly collect any of such assessments when due, the owner of any such bonds may proceed in his own name to collect such assessments and foreclose any lien thereon in any court of competent jurisdiction, and shall recover, in addition to the amount of such bonds and interest thereon, 5 per centum, together with costs of such suit including a reasonable sum for attorney's fees.

"Any number of the holders of such bonds for any single improvement may join as plaintiff, and any number of the holders of the property on which the same are a lien may be joined as defendants in such suit.

"*And such bonds shall be equal liens upon the property for the assessments represented by such bonds without priority of one over another to the extent of the several assessments against the several lots and parcels of land.*"

For convenience we shall hereafter refer to C. S., secs. 4021 and 4149, as the "numerical priority sections," and sections 4023 and 4150 as the "equality sections."

It will thus be observed that the decision in this case revolves about the judicial construction to be placed upon the numerical priority section and the equality section.

These sections as now constituted appear as integral parts of the respective acts relating to streets and sewers, were codified as component parts of the 1919 revision, and must be construed together as *in pari materia*, so as to give force and effect to the provisions of each, if possible. (*Brown v. Bryan*, 6 Ida. 1, 51 Pac. 995; *Noble v. Bragaw*, 12 Ida. 265, 85 Pac. 903; *Amsbary v. City of Twin Falls*, 34 Ida. 313, 200 Pac. 723; *Cook v. Massey*, 38 Ida. 264, 35 A. L. R. 200, 220 Pac. 1088; *State v. Kelly*, 39 Ida. 668, 229 Pac. 659; *State v. Dunbar*, 39 Ida. 691, 230 Pac. 33; *Oneida County v. Evans*, 25 Ida. 456, 138 Pac. 337; *Achenbach v. Kincaid*, 25 Ida. 768, 140 Pac. 529; *Peavey v. McCombs*, 26 Ida. 143, 140 Pac. 965; *Perrault v. Robinson*, 29 Ida. 267, 158 Pac. 1074.) The rule that statutes *in pari materia* are to be construed together means that each legislative act is to be interpreted with other acts relating to the

same matter or subject. Statutes are *in pari materia* when they relate to the same subject. (Black on Interpretation of Laws, 2d ed., p. 331, sec. 104.) Such statutes are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. For the purpose of learning the intention, all statutes relating to the same subject are to be compared, and so far as still in force brought into harmony by interpretation. (Lewis' Sutherland on Statutory Construction, 2d ed., p. 853, sec. 448.)

In attempting to arrive at legislative intent, "The endeavor should be made, by tracing the history of legislation on the subject, to ascertain the uniform and consistent purpose of the legislature, or to discover how the policy of the legislature with reference to the subject matter has been changed or modified from time to time. With this purpose in view therefore it is proper to consider, not only acts passed at the same session of the legislature, but also acts passed at prior and subsequent sessions, and even those which have been repealed." (36 Cyc. 1148.) This canon of investigation has already been adopted by this court.

"In arriving at the legislative intent as to an act alleged to have impliedly repealed or superseded another or other statutes, the nature of the several acts involved, including their respective titles, the history of such enactments, the state of the law when the acts were passed, and the history of the times, as well as the objects and purposes sought to be attained, are proper matters for consideration." (*State v. Martinez*, 43 Ida. 180, 250 Pac. 239, 240.)

With this in mind we shall therefore proceed to consider the history of these enactments, their nature and the objects and purposes sought to be attained by their passage.

With reference to street improvements, the power to issue improvement district bonds was first conferred by H. B. 41 (Sess. Laws 1901, p. 90), in which the equality section was

included, and from which the numerical priority section was excluded. This act permitted bonds to be issued against an improvement district in the discretion of the mayor and city council. Section 11 thereof provides, *inter alia,* that the bonds are "payable in instalments of equal amounts each year . . . ." and "none of which bonds nor any of the instalments shall run longer than five years." It further provides that "all sums so paid shall be applied solely to the payment of such improvements or the redemption of the bonds issued therefor," and that "the funds arising by such assessment shall be applied solely towards the redemption of such bonds." This act was included *verbatim* in the codification of 1907. (Rev. Codes, sec. 2238.)

In 1905 the legislature passed S. B. 14, found at page 297 of the Session Laws of that year, which was an act authorizing property owners within an improvement district either for street or sewer improvements to pay their individual assessments in ten annual instalments by following a certain procedure. It was supplementary to the act of 1901, and the Sewer Act of 1903, later discussed, in that it authorized the issuance of bonds for that part of the cost of an improvement voluntarily withdrawn from the original assessment by the property owners. It provided for an annual maturity of one-tenth of the bonds, and that they should be redeemed serially. This statute was embodied in chapter 15 of title 13 of the Revised Codes of 1907, and later in chapter 172 of the Compiled Statutes of 1919. It does not contain the equality clause and does not apply to the issues of this case.

Rev. Codes, sec. 2238, was amended by Sess. Laws 1911, chap. 81, p. 266, in these particulars: The maturity clause is made to read, "none of which bonds nor any of the instalments shall run longer than ten years," and "such bonds shall be numbered from one upward consecutively." The only reference to payment is found in section 12: " . . . . And all sums so paid shall be applied solely to the redemption of the bonds issued therefor." The amended act reiterates the equality clause, but does not contain the numerical priority clause.

Rev. Codes, sec. 2238, as amended by Sess. Laws 1911, chap. 81, was further amended by Sess. Laws 1915, chap. 97, but with no change in the particulars we are considering. Section 2238 was then amended by Sess. Laws 1917, p. 51, chap. 22, and here for the first time appears the numerical priority clause (p. 59) : " . . . . The treasurer shall call in and pay such bonds, *which shall be called and paid in their numerical order.*" The equality clause is retained without change. Rev. Codes, sec. 2238, as amended in 1911, 1915 and 1917, *supra,* was recodified as article 6, chapter 163, of the Compiled Statutes of 1919, where the pertinent sections appear as we have quoted them.

The sewer improvement statutes have not suffered so many changes. First enacted in 1903 (Sess. Laws 1903, p. 26, H. B. 24), the law contained the equality clause, but not the numerical priority clause. Section 12 provided, *inter alia,* that the bonds shall be "payable in instalments of equal amount each year; none of which bonds or any of the instalments shall run longer than ten years," and "the funds raised by such assessment shall be applied solely towards the redemption of said bonds." This act was amended by Sess. Laws 1905, p. 334, S. B. 43, in which the law assumed substantially its present form, the pertinent changed provisions being: "Said bonds shall by their terms be made payable on or before a date not to exceed ten years from and after the date of issue of such bonds . . . . Such bonds . . . . shall be numbered from one upward, consecutively. . . . . " The equality clause is retained and the numerical priority clause in its present form is added. These acts were recodified in chapter 14 of title 13, Rev. Codes of 1907, which was amended by Sess. Laws 1911, p. 256, chap. 80, but no change was made in these two sections. The law was recodified again in C. S., chap. 171, with the two clauses intact.

The law as finally recodified in 1919 is the legislation under which the bonds involved in this action were issued and which, therefore, is the law applicable to them, but we note that all of these laws were repealed and superseded by

Sess. Laws 1927, chap. 257, p. 439, which provides a common code for all municipal improvements. It is interesting to observe that in this last legislative pronouncement the equality clause is omitted and it is provided that the bonds "shall be serial in form and as nearly as may be with equal annual maturities, the first instalment to mature within one year from date and the last instalment in not more than ten years from date, and numbered from one up consecutively." It is further provided that annual payments of principal and interest shall be placed in separate funds, that if there is a shortage in the interest fund then interest coupons shall be paid in the numerical order of the bonds to which they are attached, and that bonds shall be paid in their numerical order. Thus it would seem that the legislature by making these express changes has directly provided for different annual maturities and preferential payment thereunder, and it seems improbable that a question similar to the one we are considering can ever arise under the new law.

This study reveals that in every enactment, amendment and codification of the statute law pertaining to this subject (except the 1927 act), the equality clause is found to be present. It also reveals that the language of the statutes relative to the maturity and mode and manner of payment of bonds, including the priority clause, has undergone many mutations until it assumed the form as finally expressed in the 1919 codes. The legislature first provided for annual maturities, then changed to the ten-year maturity clause under which these bonds were issued, and in the 1927 law reverted to the annual maturity again. It is therefore apparent that the legislature in providing that all the bonds should mature at one time and carried an equal lien right upon the assessments and property did so deliberately and with full knowledge of the consequences flowing therefrom.

Appellants contend that the numerical priority statute is mandatory, and that it must be followed by the city treasurer without reference to the equality statute, and without suggesting any interpretation for the latter. To the contrary, respondents contend that the statute is not manda-

tory but directory, and only operative during such time as their interests as equal owners are not jeopardized, and that their common title to the funds derived from assessments is founded upon the equality clause. It will thus be seen that to adopt the contention of appellants will render the equality clause entirely meaningless and ineffective, while the position assumed by respondents reconciles the two sections and makes both operative. This latter position coincides with the rule of construction which we have mentioned.

Though the language of the numerical priority clause is mandatory in form it does not necessarily follow that the statute must be strictly construed. The construction imposed depends upon the legislative intent, as was said by Mr. Justice Budge in *In re Overland Co. v. Utter*, 44 Ida. 385, 257 Pac. 480:

"Conceding that the words of the statute (C. S., sec. 3152, as amended) are mandatory in form, it does not necessarily follow that the statute is subject to a strict construction and that the mandatory words alone govern. In other words, a statute may be mandatory in form, but if it is not clear that it was the intention of the legislature that it should be so construed, courts may construe the mandatory words to be directory only. The meaning and intention of the legislature must govern, and such intention may be ascertained not only from the phraseology of the provision but also by considering its nature, its design and the consequences which would follow from construing it one way or the other. (Black on Interpretation of Laws, 2nd Ed., sec. 152; 36 Cyc. 1157.) If the history of legislation in this state clearly shows that the legislature intended that the words in a statute should be construed as directory rather than mandatory, courts will not be limited in their construction of a statute to its form, but will rather look to its substance."

The equality clause, as we have said, has persisted in every legislative declaration since the initiation of the public improvement laws. It is found included as a component part of a section which prescribes the bondholders' rights and remedies. It provides unequivocally: "And such

bonds shall be *equal liens* upon the property for the *assessments* represented by such bonds without priority of one over another *to the extent of the several assessments* against the several lots and parcels of land." Language could not be more plain and it needs no interpretation. The legislature intended to say and did say that the lien of all bonds was equal, both upon the property and upon the assessments. This section establishes the kind and extent of the title acquired by the bondholders. The same statute authorizes the bondholders to "*receive,* sue for and collect, or *have collected* such assessment embraced in any such bond." As we construe the clear wording of the act, it was the intent of the legislature to impose this equal lien upon all assessments collected, to the same extent as upon the assessed property, and to hold that immediately upon voluntary payment of the assessments by the taxpayer this equal lien was destroyed is to render the clause entirely ineffective. Nor can it be logically contended that the equality clause only arises in the event of a foreclosure by the bondholders, since the equal title attached when the bonds were issued. The repeated enactment of the equality clause by the legislature without change or variation indicates an intent to retain this form of equal ownership in the bondholders, without priority, one over the other, and is entitled to great weight, particularly in the face of the many changes relative to bond maturities and the language pertaining to retirement. Under the acts which we are considering, the bonds are all issued on the same date and they mature on the same date. The equality clause would under such circumstances apply in the absence of an express prohibition, and being expressly enacted in the same act, it would be a broad assumption to say that by mere numbering this claim is rendered entirely nugatory.

Both the equality clause and the numerical priority clause will be given effect by holding that the latter is directory only. We believe that the legislature only intended by the numerical priority clause to provide an orderly method of retiring the bonds, and for the stoppage of interest, and that

it did not thereby intend to destroy the equal, joint estate of all of the bondholders in the lien of the bonds. In the absence of objection and so long as that equal, joint estate of all of the bondholders is not jeopardized, the city officials are authorized and required to pay off the bonds in their numerical order as required by statute. By so doing, the equal lien of all the bonds is not denied, but a method of orderly payment is provided which will prevail under ordinary circumstances. When, however, as in this case (and we confine this decision to these immediate facts), certain of the bonds remain unpaid after the maturity of the entire issue, and the remaining security has been obliterated on account of nonpayment of general taxes and consequent loss of the assessed property, the lien of all unpaid bonds will attach equally upon all funds in the hands of the city treasurer belonging to the particular district, and the treasurer must pay them out *pro rata,* and not in numerical order. The fact that other bondholders may have theretofore been paid in the orderly carrying out of the numerical priority clause without objection does not alter the situation.

Counsel for appellant rely almost exclusively upon three Washington cases, viz.: *State ex rel. Boyd v. Mills,* 133 Wash. 681, 234 Pac. 1042, 238 Pac. 581; *Johnson v. McGraw,* 139 Wash. 139, 245 Pac. 915; *State ex rel. Moses v. Walters,* 156 Wash. 664, 287 Pac. 874. These decisions are based upon statutes which do not contain the equality clause which appears in the Idaho statutes, or any language of similar import. That the absence of such statute was of controlling importance is expressed in *Johnson v. McGraw, supra:*

"There is nothing in the statute which indicates an intention that, when the remedy there provided for is resorted to, it shall destroy the right of priority which exists as between bondholders of a lower and a higher number."

This would appear to adequately differentiate the cases from the one we are considering. Aside from this, we are not prepared to subscribe to the law announced therein,

even as appertaining to the restricted statutes of Washington, although it is unnecessary to consider them further.

Counsel also cite the case of *New First Nat. Bank of Columbus, Ohio, v. Linderman*, 33 Ida. 704, 198 Pac. 159, 161, in which this language is found: "The bondholders look primarily to the local improvement district fund for the payment: first, of all interest due, then of the matured bonds themselves in numerical order as far as the money collected will go." This, of course, merely reiterates the substance of the statute. The facts out of which this action arose involved the refusal of the city treasurer to pay the interest on all outstanding bonds out of the proceeds of one of the annual intermediate assessments, and the court directed the officer to comply with the statute. The bonds were not yet due and the remaining security had not been exhausted, these facts marking the difference between that case and the one we are considering. A construction of the equality clause and the numerical priority clause with reference to each other was neither presented nor considered.

Appellants urge that, because the bonds themselves provide upon their face "that whenever there shall be sufficient money in Local Improvement District No. ——, over and above the amount sufficient for the payment of interest on all unpaid bonds, the city treasurer shall call in and pay' such bonds in their numerical order, etc., . . . . , " a judicial decision which requires payment thereof *pro rata* with all other unpaid bonds amounts to an illegal impairment of the obligations of a contract. The authorities presented are few and the sustaining argument is meager, but we will examine the contention.

As we have stated, the only recitals which are required by statute to be placed in a bond, aside from those evidencing the debt, promising to pay and enumeration, are: "Each bond shall provide that the principal sum therein named and the interest thereon shall be payable out of the local improvement fund created for the payment of the cost and expense of such improvement and not otherwise" (C. S., secs. 4018 and 4144), and "The holder of any bond issued

under the authority of this article shall have no claim therefor against the municipality by which the same is issued, in any event, except for the collection of the special assessment made for the improvement for which said bond was issued, but his remedy, in case of nonpayment, shall be confined to the enforcement of such assessments. A copy of this section shall be plainly written, printed or engraved on the face of each bond so issued.'' (C. S., secs. 4026 and 4151.) The law neither requires nor authorizes the inclusion of any other recitals of provisions of the statutes in the bonds.

 The existing law enters into and becomes a part of all contracts (*Fidelity State Bank v. North Fork Highway District,* 35 Ida. 797, 31 A. L. R. 781, 209 Pac. 449), and it is a work of supererogation to attempt to cite the law in a contract. All the law attaches without recital. In the bonds involved in this action the numerical priority statute is cited but the equality statute is not. Obviously, the latter was yet an integral part of the contract and a mere failure to copy it into the bond will neither eliminate it nor confer upon the bondholders any other or additional rights than if the bonds contained the bare recitals provided by law.

 In any event, the objection is not tenable, as the constitutional prohibition against impairment of the obligations of a contract is directed at legislative, not judicial, action. (12 C. J. 990, sec. 602; *Lehigh Water Co. v. Easton,* 121 U. S. 388, 7 Sup. Ct. 916, 30 L. ed. 1059.)

The last contention advanced by appellant is that respondents are confined to an action to foreclose the delinquent assessments and to compel the city official to levy, under the express terms of C. S., secs. 4026 and 4151, which are printed upon the face of the bonds. An examination of these sections reveals that they are directed against the assertion of claims against the municipality by the bondholders (C. S., sec. 4026, quoted *supra*), and the very apparent purpose of the section was to relieve the municipality and the property owners from personal liability. This action is not one to recover either against the munici-

pality or the property owners. Rather it is an action to enforce a right which plaintiffs allege has already accrued, and to protect property rights which have come into being and now exist. The city is not properly a party at all. No authority is cited by appellant to sustain this point, and we shall content ourselves with this statement.

It follows that the judgment must be affirmed, and it is so ordered. Costs to respondents.

Lee, C. J., and Varian, J., concur, and Budge and Givens, JJ., dissent.