(No. 6235.   May 18, 1935.)

LOUISE WHEELER, J. B. BLOCK and METHODIST OLD PEOPLES HOME, a Corporation, Respondents, v. THE CITY OF BLACKFOOT, a Municipal Corporation, and LEON J. CHAPMAN, Treasurer of the City of Blackfoot, Appellants.

[45 Pac. (2d) 298.]

E. P. Monson, Jr., and J. H. Andersen, for Appellants.

Otto E. McCutcheon, for Respondents.

AILSHIE, J.—The City of Blackfoot, one of appellants herein, in accordance with law and the ordinances of the city, created Special Improvement District No. 18 and issued and sold seventy bonds for construction purposes, sixty of which were for $1,000 each, nine were for $271.95 each and one for $271.98, aggregating in all the sum of $62,719.53; all were dated October 1, 1916, and provided for semi-annual interest at six per cent. Proceeds from the sale of the bonds were applied in payment of the expenses and construction charges for improvements within the district. The cost of the improvements and expenses was assessed against the property within the district and the assessment-roll was filed with the county treasurer. Assessments were to be collected in ten annual instalments and turned over to the city treasurer, less one-fourth of one per cent collection charge. Special Improvement District No. 18 Fund was established and charged with assessments as paid in and credited as bonds and interest were paid therefrom. The county treasurer collected from property owners within

the district the sum of $81,355.24 as assessments. This
amount was disbursed as follows:

| | |
|---|---:|
| Retirement of bonds principal | $58,947.55 |
| Retirement of Interest Coupons on Bonds | 19,200.72 |
| Costs of collection | 1,326.94 |
| Correction of error, mistake in figuring and collecting assessments | 194.19 |
| Interest on Warrant #2664, etc. | 809.50 |
| Exchange | 23.32 |
| Cash on hand in fund | 853.02 |

$81,355.24

The correctness of this account is admitted.

Before any assessments were due or collected in 1917
the first instalment of bonds and interest became due. In
order to prevent default, Warrant No. 2664, upon the *city's
general fund,* was issued on September 13, 1917, by the
*mayor and clerk (without authority of the city council)* and
sold to the bank. The bank thereupon drew its draft on
a New York bank in favor of the Hanover National Bank
for the sum of $8,153.54 and the amount of this draft was
applied in payment of maturing bonds in the sum of
$6,271.95 and the balance of $1,881.59 was used in payment
of maturing interest coupons on the entire bond issue. This
warrant No. 2664 was "called" and paid by the city to the
holder (the First National Bank) on February 28, 1919.
*On the latter date* there was transferred from the general
fund of the city to the Improvement District No. 18 Fund,
$8,153.54, which represented the face of the warrant. On
that date and prior to the transfer of this sum there was
in the Improvement District No. 18 Fund $5,555.68. The
amount loaned from the general fund to the Improvement
District Fund No. 18 remained in the Improvement District
Fund without payment of interest or any of the principal
from February, 1919, to September 30, 1926. On the latter
date the city council ordered a transfer of the sum of
$8,963.04 (original sum loaned the district plus interest on
the same to February, 1919) from the Improvement Dis-

trict Fund to the city's general fund, and the advance or loan was thus paid.

All of the bonds of District No. 18, together with interest coupons, had been paid except bonds numbered 67 to 70, inclusive, and one coupon on each for six months interest, totaling principal of $3,271.98. The Improvement District defaulted in the payment of these last four bonds mentioned above on October 1, 1926, the date of their maturity; no action was taken by respondents (the bondholders) to foreclose the delinquent assessments until five years. (lacking one day) after default,—complaint in this cause being filed on September 30, 1931.

Plaintiffs alleged that the money withdrawn from the Improvement District Fund in the sum of $8,153.54 was "unlawfully and wrongfully withdrawn from said Local Street Improvement District No. 18 Fund and transferred and credited to the current expense fund of said city," and alleged the same amounted to a conversion of so much of the improvement district funds. The complaint then prayed for a *pro rata* payment to the several defendants from the sum of $853.02 remaining in the fund and "that plaintiffs have judgment against the City of Blackfoot . . . . for the amount of principal remaining unpaid on each of plaintiffs' bonds after the application of the sum admittedly in the hands of the treasurer."

Upon the trial of the issues an accounting was had, and the court made findings of fact and entered judgment as follows:

"That the city treasurer of the defendant City of Blackfoot shall pay to the plaintiff the full amount of the face of said bonds amounting to the principal sum of $3271.98 and interest amounting to $98.16 on surrender of the said bonds owned by the respective plaintiffs; that said City of Blackfoot shall pay into the fund of said Local Street Improvement District No. 18 the sum of $2571.11, failing which the plaintiffs shall have judgment and execution therefor; that plaintiffs recover their costs and disbursements incurred in this action taxed at the sum of $14.40."

The City and the Treasurer have appealed and in this court insist that the only sum available for the payment of respondents' bonds is the balance of $853.02, which the books of the city showed was in the fund on October 1, 1926, when these bonds matured. These are the material and essential facts of the case.

Here a loss must be suffered by someone. That loss must fall either upon the general fund of the City of Blackfoot, which means, in the finish, the taxpayers of the city, or else it must be borne by the owners of the improvement district bonds. We are therefore confronted with the question: Upon whom should this loss fall; or in other words, which of the parties litigant stands in the most favorable position to merit consideration in the present case?

In the first place it must be admitted that all funds collected by the city by means of the improvement district assessments were trust funds pledged exclusively to the payment of the bonds issued against the special assessments. (*Meyers v. City of Idaho Falls*, 52 Ida. 81, 11 Pac. (2d) 626; *Jewell v. City of Superior*, 135 Fed. 19.) On September 30, 1926, one day before the bonds here in question matured, there was enough money in the improvement district fund to pay these bonds. On that date, however, the city withdrew from the fund $8,153.54, being enough to pay its claim, so that on the next day when respondents' bonds matured there was only left in the fund the sum of $853.02; whereas the bonds held by respondents aggregated $3,271.98, principal, and $98.16 interest. We then have a case where the city as a general creditor of the improvement district prefers its claim over and above the claim of a bondholder who has a trust lien on the fund.

It is contended, however, by the city that the amount of money which it withdrew from the fund ($8,153.54) was not in fact a part of the fund but merely represented an advancement which it had made to the city some nine years prior thereto (in September, 1917) as a mere accommodation in order to prevent the improvement district bonds defaulting by reason of failure of payment in 1917 of suffi-

cient assessments to meet the maturing bonds and interest coupons.

It is further argued by the city that the bondholders have in no way suffered from the transaction and that they could not have realized any more money upon the maturity of these bonds, had this advancement not taken place, than they can at this time after the city has repaid itself out of the fund. This latter contention gives rise to the serious issues in the case. This advancement was made nine years before the maturity of the bonds held by respondents, and the transfer of that sum of money ($8,153.54) to the improvement district fund resulted in there being at all times thereafter abundant funds available for the payment of bonds and coupons as they matured. There was consequently no reason, during these intervening years, for holders of unmatured bonds to exercise any special diligence in urging the collection of unpaid or delinquent assessments against any of the property in the improvement district; and so far as the record discloses the bondholders had no notice or knowledge of the transaction whereby the city had turned over to the improvement district fund this sum of money, which it now appears that it had advanced.

On the other hand, had the fund been constantly $8,153.54 less in amount from year to year than actually showed on the books, the bondholders might have exercised such diligence as would have collected more assessments and brought more into the fund than was actually collected, and thereby insured payment of their bonds in full or at least a larger percentage than they can realize under the conditions as presented by the city at the present time. (*New First Nat. Bank v. City of Weiser*, 30 Ida. 15, 166 Pac. 213.) The record is entirely silent as to what actually did happen with reference to the collection of all assessments levied in the improvement district; but the very fact that by reason of this irregular transaction a condition could have arisen prejudicial to the bondholders furnishes a very cogent objection to the contention made by the city in

justification of its withdrawal of this sum of money at so late a date.

Another serious objection which is urged against the contention of the city is that under the decision of this court in *Meyers v. City of Idaho Falls*, 52 Ida. 81, 11 Pac. (2d) 626, had these bondholders known that there was an actual shortage of $8,153.54 in this fund, or rather that the books showed that sum more than the fund really amounted to, they might have protected themselves some years prior to the maturity of their own bonds by insisting upon having the fund prorated between themselves and the holders of other unpaid bonds. Of course it cannot be denied that as the matter stands, with this large sum of money having been withdrawn from the fund on the day before the maturity of respondents' bonds, they had no possible way of prorating with any other bondholders, and of course they probably could not have obtained an order for prorating without being able to show with some degree of certainty that the fund would not be sufficient to pay all bonds in full. There is no contention made here that these or any other bondholders had notice or knowledge of the transaction by which this improvement fund had been enhanced in the sum advanced from the general funds of the city.

There is another question that has been mooted in this case but not directly presented and upon which we do not pass, but nevertheless it is one that we have not been able to dismiss from our minds in the consideration of the case, and that is, the great length of time intervening between the transfer of this sum of $8,153.54 (February 28, 1919) to the improvement district fund, and the date of withdrawal of that sum (September 30, 1926) from the improvement fund. The warrant was drawn on September 13, 1917, without any authority whatever from the city council and the money was borrowed from the bank on this warrant. Now, had this transaction taken place between two individuals or two separate corporations, the claim would have been barred by the statute of limitations. Again, had it

taken place between two individuals or two separate corporations, one of which was holding a fund as trustee, the trustee could not have preferred a general creditor over a beneficiary in disbursing the trust funds. All other considerations being put aside, the element of laches and negligence on the part of the city looms large in the case. Had the city paid this warrant which it sold to the bank out of the first money that came into the improvement district fund, the equities would appear much more favorably to the city and the thought of laches and negligence would not thus embarrass the consideration of the case on its other legal aspects.

We are constrained to conclude that the trial court reached a correct judgment in directing the city to pay the respondents the principal and interest due on their bonds. The judgment of the district court should not authorize the issuance of an execution (sec. 49–1717, I. C. A.) and the words, "and execution," should be stricken from the judgment hereinbefore set forth, and it is so ordered. With this correction made, the judgment will be affirmed with costs to respondents.

Givens, C. J., and Morgan and Holden, JJ., concur.

Petition for rehearing denied.

BUDGE, J., Dissenting.—With all due respect to the opinion of my associates I am unable to concur therein. There is no material dispute as to the facts. It will no doubt be conceded that when the mayor and city clerk drew the warrant on the general fund of the city for $8,153.54, payable to the First National Bank, they acted without sanction of law and the warrant was illegal and the use of the proceeds of this warrant for the payment of the due bonds and accrued interest of the improvement district was likewise illegal. That the proceeds of the warrant paid into the improvement district fund should have been immediately returned to the general fund of the city must be conceded; however, the lapse of time did not right

the legal wrong, and the title to the money so unlawfully withdrawn from the general fund did not vest in the improvement district. The $8,153.54 was the money of the city at all times, collected from the general taxpayers of the city for a specific purpose and none other, and was subject to be recalled and replaced in the general fund at any time as funds came into the special improvement district fund.

It is indeed difficult to conceive how the bondholders could be injured by the unlawful act of the mayor and city clerk. In fact all of the bondholders were benefited, some to the extent of having their bonds paid off, others to the extent of having their coupons paid. It is admitted that all of the money collected from the special improvement district by the city was paid to the bondholders. The rule is well established in this jurisdiction that where a municipal corporation has paid upon obligations of an improvement district a sum equal to the amount collected from assessments against the property within said district, such corporation cannot be made liable for any further amount to the creditors of the district. The indebtedness created by an improvement district is a liability *in rem* against the property within such improvement district and is not a liability of the person or of the municipality. (*Broad v. City of Moscow,* 15 Ida. 606, 99 Pac. 101; *New First Nat. Bank v. City of Weiser,* 30 Ida. 15, 166 Pac. 213.) The statutes of this state afford the bondholder a plain, speedy and adequate remedy at law by foreclosure of his lien against the delinquent taxpayer's property within the improvement district. (*Broad v. City of Moscow, supra; First Nat. Bank v. City of Weiser, supra; New First Nat. Bank v. Linderman,* 33 Ida. 704, 198 Pac. 159.) A municipality, as such, has no interest in the bonds of an improvement district with the right of foreclosure against a delinquent assessment. Should there be, and there is no showing to the contrary, sufficient delinquent assessments on the property within the district to pay off the balance of the bonded indebtedness the city could not reimburse itself by legal

proceedings and in this way return the money to the general fund. No such right or remedy is contemplated by statute.

Concisely stated, we have this situation: An improvement district was created, bonds of the district were sold, the money received was expended for improvements within the district, the property of the district became liable for the amount of the bonds, together with interest, to be paid by special assessment levied against the property within the district. The bonds contain the following language:

"The holder of any bond issued under the authority of this section shall have no claim therefor against the city or village by which the same is issued in any event except from the collection of the special assessments made for the improvements for which said bond is issued, but his remedy in case of nonpayment shall be confined to the enforcement of such assessments."

"The principal sum herein named and the interest thereon shall be payable out of the local improvement fund created for the payment of the cost and expense of such improvement, and not otherwise."

" . . . . For the collection of the assessments levied in said Local Improvement District No. 18 the City of Blackfoot, County of Bingham, State of Idaho, hereby pledges the exercise of all lawful corporate powers."

As will be seen from the language used in the bonds there is no liability against the city for the payment of the bonds or interest in case of nonpayment, but both the liability and the enforcement of the remedy is against the lands within the improvement district. The city is merely burdened with the duty of paying over to the bondholders the special assessments which have been paid to or collected by the city for the payment of their bonds and the interest thereon as they mature. By awarding judgment against the city, taxpayers without the improvement district are forced to pay an indebtedness of the improvement district directly in violation of statute, and in this manner, to the extent of the judgment against the general taxpayers

within the city, the bondholders are paid contrary to the stipulation in the bonds. The liability against the taxpayers is founded upon the unlawful act of the mayor and city clerk performed without the knowledge or consent of the general taxpayers. The bondholders would have been in no worse position had the improvement district fund not unlawfully received the $8,153.54 from the general fund of the city. The bondholders, as above stated, have received every dollar paid into the city treasury from special assessments levied upon property within the improvement district, and this is all they were entitled to receive and all their contracts called for.

It is my opinion, however, that the city should not be permitted to reimburse itself for any interest paid to the First National Bank on the illegal warrant drawn by the mayor and city clerk out of the improvement district fund and neither should it be reimbursed for the amount paid out for exchange.

The judgment should be reversed.