**SMITH et al. v. BOISE CITY, IDAHO, et al.**
**No. 8981.**

Circuit Court of Appeals, Ninth Circuit.
June 27, 1939.

Rehearing Denied July 31, 1939.

Oliver O. Haga and Richards & Haga, all of Boise, Idaho, for appellants.

Thornton D. Wyman, City Atty., and Z. Reed Millar, both of Boise, Idaho, for appellees.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

This is an appeal from a decree rendered by the United States District Court in a suit in equity for an accounting, brought by certain owners of improvement district bonds on behalf of themselves and others similarly situated, against Boise City, Idaho, and its treasurer. Recovery was allowed the plaintiffs in the sum of $6,846.-17, to be prorated over all outstanding bonds of the district. Plaintiffs are prosecuting this appeal, contending that they are entitled to judgment for the full amount of the bond issue, less amounts paid by the district on account of principal and interest, because of the alleged failure of Boise City to sustain the burden of proof that it had discharged its duties as trustee, and for other reasons hereinafter discussed.

Appellants are the owners of $27,500 par value of bonds, dated January, 1922, issued for improvements in Local Sidewalk and Curb Improvement District No. 38 of Boise City, under the authority of section 49-2701 et seq., of the Idaho Code. There are $37,000 par value of said bonds outstanding. The complaint alleged, inter alia, the issuance of the bonds, the ownership thereof, and the presentation of the same to Boise City for payment and the refusal of such payment. Appellant then alleged the negligence and carelessness of Boise City in permitting its former City Clerk,

who had held the position of Clerk for over ten years prior to September, 1933, to embezzle large sums of money from the City, which included, appellants allege, large sums of the funds of the Improvement District. They further alleged the negligence of Boise City in permitting inaccurate and insufficient records and an inadequate system of accounting to protect the funds held in trust for the bondholders. They further alleged that Boise City failed and neglected to make the assessments required to be made for the principal and interest on the bonds and that the City failed to collect from Ada County sums belonging to said trust fund.

Upon the trial of the case the District Court made the following findings, inter alia,

"* * * (g) That a former city clerk who had held the position of Clerk of said Boise City for upwards of ten years immediately prior to the first day of September, 1933, failed to account for a large sum of money belonging to Boise City, which includes $2,242.92 of the funds of said Local Sidewalk and Curb Improvement District No. 38, collected for the purpose of paying said bonds.

"II. That the defendant City failing to exercise ordinary care and prudence in causing to be kept accurate records resulted in the City Clerk keeping inaccurate and false records of the funds belonging to said District No. 38, and the amount here found to be unaccounted for was wrongfully diverted and misappropriated by the City Clerk, and the negligent, careless and inefficient manner in which the books and records of the City were kept resulted in losses to said fund that should have been applied on the payment of said bonds as appears from the following tabulated statement:

Total amount of bonds issued.... $56,539.10
Total amount levied for payment
of principal...................... 56,493.62

Deficit in amount levied for payment of principal................ $   45.48
Amount remitted by City Clerk
to City Treasurer.............. $31,060.27
Amount remitted by County
Treasurer to City Treasurer... 23,816.21

Total received by City Treasurer $54,876.48
Amount paid by City Treasurer
on principal of bonds........... $19,539.10
Amount paid by City Treasurer
on interest on bonds............ 31,932.88

Total paid out by City Treasurer $51,471.98

Difference between amount received by City Treasurer and
amount paid out................ $3,404.50
Amount unaccounted for by City
Clerk .......................... 2,242.92
Assessments shown on books of
City Clerk as unpaid but not
certified to county............. 800.11
Amounts marked paid on assessment rolls but no receipts found
and money not accounted for.. 353.16

Total .................................. $6,846.17"

Appellants assign as error, first, that the District Court should have awarded judgment for the full amount of the bonds outstanding with interest at the rate of 7% per annum from January 1, 1932, "because appellees failed to show by the accounts rendered that the losses in the trust fund were not caused by the negligence, carelessness or wrongful acts of the city or its officers; or stated otherwise, where a trustee has kept his accounts in such a negligent and careless manner that he is unable to show that he has properly performed his duties and complied with the law relating thereto, the presumption will be against the trustee on settlement, and he will be charged with what he can not account for." Appellants argue under this assignment of error that when a municipal corporation, having authority to make special improvements and to provide for the payment thereof out of special assessments, fails to levy the necessary assessments, or misappropriates or diverts the funds to other purposes, or otherwise so performs its duty that a loss results to the bondholders, the corporation becomes primarily liable to pay the debt.

The portion of this argument other than that relating to misappropriation of the funds collected, is based upon an erroneous assumption that the trusteeship of Boise City commenced with the issuance of the bonds in question. A similar contention was considered by this court in the case of Moore v. City of Nampa, 9 Cir., 18 F.2d 860. That case involved a construction of the same Idaho statutes as those involved in this case. The action was in tort, the plaintiff alleging that the defendant city was negligent in failing to have the preliminary estimate of cost prepared and filed in the manner and amount required by law, in awarding a contract in excess of the estimated cost, in causing a false and misleading certificate to be issued, in failing to levy valid assessments, and in failing to collect assessments for the pay-

ment of plaintiff's bonds or creating or providing a fund for the payment thereof. A demurrer to the complaint was sustained, and this court affirmed the decision of the District Court. In that case we distinctly held that a complaint alleging negligence of the city in failing to levy a valid assessment, and in failing to collect the assessments made, stated no cause of action against the city in view of the statute under which the bonds were issued,[1] but that the liability of the city is limited to a proper handling of the funds when collected. To that extent the city is the trustee for the bondholders, but the officers of the city are not acting for the city in levying the assessments and collecting the same. In the performance of these duties the officers of the city are acting as "special agents or instrumentalities to accomplish a public end", and the city is not chargeable with their acts of negligence. If the city shall neglect to levy the assessment and pursue the usual and ordinary methods provided by the statute for the collection of the same, the bondholders may compel it to do so by mandate, and if it neglects to collect the assessments after levy having been made and the property owners become delinquent in the payment of their installments the bondholders may foreclose their lien through the court.

Appellants rely strongly on the case of Cruzen v. Boise City, 1937, 58 Idaho 406, 74 P.2d 1037, contending that it holds that the city as statutory trustee is liable for any violation of the law which results in a loss to the beneficiaries under the trust. That case, however, involved the liability of the city for moneys collected by the city and embezzled by the city clerk. The court held that the funds collected by the city through its clerk were "trust funds" pledged exclusively to the payment of the bonds issued against the special assessments.

No Idaho cases holding contrary to our decision in Moore v. City of Nampa, supra, have been called to our attention, and in the absence thereof we see no reason for departing from our previous construction of the Idaho statute involved.

■ Appellants complain that the condition of the books of the City make it impossible to ascertain just how much money actually received by the City, and that therefore there has been a failure to sustain the burden of proof by the trustee. They have included in their statement of the evidence on appeal certain excerpts from the audit of the books of the City to the effect that due to the lack of records and laxities in the administrative supervision of the City's funds, the auditors were unable to completely ascertain the extent of all losses sustained by the City, and especially the extent to which unauthorized or fraudulent expenditures may have been made. However, it should be noted that the audit referred to was an audit of all of the records of the City Clerk. It was not confined to an audit of the books relating to this improvement district. The trial court found as a fact that the amount unaccounted for by the city clerk was $2,242.-92. We have not before us all of the evidence taken before the trial court. In the absence of such evidence, we are not in a position to say that the trustee failed to sustain the burden of proof that that was the entire amount received by it, or that the trial court was in error in finding the amounts received and disbursed by the City on account of the improvement district in question.

■ Appellants argue under this assignment of error that the City should be chargeable for interest paid out on the bond issue in excess of the amount levied therefor. Section 49-2723 of the Idaho Code provides that interest shall be paid from the funds arising from the assessments. The Supreme Court of Idaho in the case of Bosworth v. Anderson, 47 Idaho 697, 280 P. 227, 65 A.L.R. 1372, in construing the Idaho statutes, held that a city was not liable for applying improvement district funds on interest. The argument therefore boils down to a contention that the City is liable for failure to levy an amount sufficient to take care of the interest. We think that the above discussion relative to the liability of the City for failure to levy a sufficient assessment should dispose of this contention.

■ Appellants in their brief on appeal specify as error and argue that the trial

---

[1] Sec. 49-2728, I.C.A., provides, "The holder of any bond issued under the authority of this chapter shall have no claim therefor against the municipality by which the same is issued, in any event, except for the collection of the special assess-ment made for the improvement for which said bond was issued, but his remedy, in case of nonpayment, shall be confined to the enforcement of such assessments."

The bonds issued to plaintiffs contained the recital of that provision of the law.

court should have allowed appellants interest on the amount found by the court as having been wrongfully diverted by the City Clerk, from the date of misappropriation.

The only assignment of error by appellants upon which this specification could have been based is worded as follows: "That the court erred in holding and deciding that plaintiffs were entitled to judgment against the defendant Boise City only for the sum of $6,846.17, together with costs of the action, and interest thereon from the date of the decree herein at the rate of 6% per annum."

This cannot be considered because it is too general. Century Indemnity Co. v. Nelson, 9 Cir., 1936, 90 F.2d 644, 647. Furthermore, there is no showing that this contention was made in the trial court. In the circumstances, we make no ruling on this specification of error.

Appellants' next assignment of error has to do with the decision of the District Court that Boise City is not liable for having paid bonds 1 to 39 inclusive in their numerical order instead of pro-rata. The bonds did not mature until January 1, 1932, and those paid were paid before maturity.

The statute providing the manner of payment of the bonds is Section 49-2723, Idaho Code, reading as follows: "* * * Whenever there shall be sufficient money in any local improvement fund against which bonds have been issued under the provisions of this chapter, over and above the amount sufficient for the payment of interest on all unpaid bonds, to pay the principal of one or more bonds, the treasurer shall call in and pay such bonds, which shall be called and paid in their numerical order: provided, that such call shall be made by publication in the city official newspaper on the day following the delinquency of any instalment of the assessment or as soon thereafter as practicable and shall state that bonds No. ——— (giving the serial number or numbers of the bonds called) will be paid on the day the next interest coupons on said bonds shall become due, and interest upon said bonds shall cease upon such date."

On the other hand, Section 49-2725, Idaho Code, provides in the last paragraph thereof that, "* * * such bonds shall be equal liens upon the property for the assessments represented by such bonds without priority of one over another to the extent of the several assessments against the several lots and parcels of land".

In Meyers v. Idaho Falls, 52 Idaho 81, 11 P.2d 626, the Idaho court considered the above sections of the code and came to the conclusion that the provision for payment of bonds in their numerical order was not mandatory but directory only. It said, 52 Idaho page 96, 11 P.2d page 631: "Both the equality clause and the numerical priority clause will be given effect by holding that the latter is directory only. We believe that the Legislature only intended by the numerical priority clause to provide an orderly method of retiring the bonds, and for the stoppage of interest, and that it did not thereby intend to destroy the equal joint estate of all of the bondholders in the lien of the bonds."

In the Meyers case, supra, the question before the court was as to the proper method of applying the funds of the improvement district, where certain of the bonds remained unpaid after the maturity of the entire issue, and the remaining security had been obliterated on account of nonpayment of general taxes and consequent loss of the assessed property. The court expressly confined its decision to those immediate facts, and distinguished a prior case of New First National Bank of Columbus, Ohio v. Linderman, 33 Idaho 704, 198 P. 159, in which it had been held that the improvement district funds should be paid first on the interest due, and then on the matured bonds themselves in numerical order as far as the money collected would go. In the New First National Bank of Columbus case the bonds were not yet due (as was the situation in the instant case at the time the payments in question were made) and the remaining security had not been exhausted. We think that the instant case is not to be distinguished from the New First National Bank of Columbus case. As said by the District Court in its memorandum opinion in the instant case, "The mere fact that during some of the time there were due on some of the property taxes did not exhaust the security, because under the state revenue laws the remaining security would not become exhausted for a number of years."

Appellants contend, however, that since the numerical priority clause of the statute has been held by the Idaho court as directory and not mandatory, the rule of the Meyers case, supra, rather than that of the

New First National Bank of Columbus case, supra, is applicable where it is apparent that the fund is insolvent. This is indicated in certain expressions of the Idaho court in the case of Wheeler v. City of Blackfoot, 55 Idaho 599, 45 P.2d 298, 300, wherein the court said, "Another serious objection which is urged against the contention of the city is that under the decision of this court in Meyers v. City of Idaho Falls, 52 Idaho 81, 11 P.2d 626, had these bondholders known that there was an actual shortage of $8,153.54 in this fund, or rather that the books showed that sum more than the fund really amounted to, they might have protected themselves some years prior to the maturity of their own bonds by insisting upon having the fund prorated between themselves and the holders of other unpaid bonds. Of course, it cannot be denied that as the matter stands, with this large sum of money having been withdrawn from the fund on the day before the maturity of respondents' bonds, they had no possible way of prorating with any other bondholders, and, of course, they probably could not have obtained an order for prorating without being able to show with some degree of certainty that the fund would not be sufficient to pay all bonds in full."

The court at that point was considering the liability of the city for having withdrawn from the improvement district funds the day before maturity of the bonds, the sum of approximately $8,000 which it had advanced to the district some years prior thereto as an accommodation to prevent the improvement district bonds defaulting by reason of failure of payment of sufficient assessments to meet the maturing bonds and interest coupons. The court did not base its decision entirely on the above contention, but concluded for a number of reasons that the city was liable to the bondholders for the principal amount of their bonds.

Appellants' contention that the improvement district fund was insolvent from the beginning is based partly upon the fact that the assessment levied for principal was $45.48 less than the amount necessary to pay the principal of the bond issue in full, and based partly upon the fact that there were delinquencies in the payment of the assessments making it impossible for the city to retire the bonds as rapidly as had been originally contemplated, resulting in increased amounts being paid on interest.

While the Wheeler case, supra, does indicate that the bondholders would have been able to obtain an order for the prorating of the funds had they been able to show with some degree of certainty that the fund would not be sufficient to pay all bonds in full, it does not say that the bondholders can sit by without objection until the city has paid certain of the bonds in full under the directory statute, and then complain years later (the first bonds were retired by the city in 1923, and some were retired periodically from that time until January, 1931) that the fund should have been prorated.

We think that the Wheeler case, supra, of necessity charges the bondholders with knowledge of the condition of the improvement fund, for it holds the city liable for keeping some $8,000.00 in the fund which did not properly belong therein, thereby depriving the bondholders of an opportunity of applying for a prorating of the bonds. In the instant case the bonds in question were paid by the city under the authority of the directory statute, without objection on the part of the bondholders, and we think it would be inequitable to now hold the city liable for so doing.

Appellees in their brief question the propriety of the district court's allowing the $45.48 item, designated "deficit in the amount levied for payment of principal". The same argument would apply to the $800.11 item designated "assessments shown on the books of the City Clerk as unpaid but not certified to the county". However, since appellees have not filed a cross-appeal, we make no ruling on the question of whether said items were or were not properly allowed in the recovery, but we have confined our opinion to assignments of error set out by the appellants. It is well settled that in the absence of a cross-appeal an appellee cannot attack the decree with a view either to enlarging his own rights thereunder or lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below. Morley Const. Co. v. Maryland Casualty Co., 300 U.S. 185, 191, 57 S.Ct. 325, 81 L.Ed. 593.

The decree of the District Court is affirmed.