[No. 14130.   Department One.   October 20, 1917.]

ALEX LINDSTROM *et al., Respondents,* v. J. B. McMILLAN
*et al., Appellants.*[1]

HIGHWAYS—ESTABLISHMENT—PETITION—SIGNERS — SUFFICIENCY—
STATUTES.  There is no constitutional objection against the initiation of a permanent highway improvement by a petition signed by
the owners of two-thirds of the lineal feet of the lands fronting upon
the highway, as authorized by Rem. Code, § 5879-2, and it is not
necessary that the petition be signed by two-thirds of the owners
of the property to be included within the assessment district.

SAME—ESTABLISHMENT—ASSESSMENT — LANDS INCLUDED.   Lands
on the convex side of a curve to be made at a highway intersection,
border on the highway, and if within the limits fixed by the county commissioners, pursuant to Rem. Code, § 5879-10, may be assessed for permanent highway improvements.

SAME—ASSESSMENT—METHODS—BENEFITS—ZONE SYSTEM.   An assessment of lands, not shown to be in excess of the benefits received,
is not *ipso facto* invalid because made by area or by a zone system,
under Rem. Code, § 5879-10 fixing three zones on each side of a permanent highway improvement, and specifying the proportion each
shall bear of the cost assessed to the property in the district, and
providing that each tract or parcel of land in any zone shall be assessed according to the relation of the area thereof to the total area
within the zone.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered December 23, 1916, upon
findings in favor of the plaintiffs, in an action to enjoin the
collection of an assessment for a permanent highway improvement, tried to the court.   Reversed.

*W. P. Brown,* for appellants.

*Brown, Peringer & Thomas,* for respondents.

MAIN, J.—This action was brought for the purpose of
having declared void, and restraining the collection of, a
local assessment for a permanent highway improvement.
After the issues were framed, the cause was tried to the court

[1]Reported in 168 Pac. 463.

without a jury, and resulted in findings and conclusions of law and judgment supporting the position of the plaintiffs. From this judgment, the defendants appeal.

The facts which present the questions involved may be stated as follows: The location of the permanent improvement was in Whatcom county, and was on the road connect-

ing Bellingham and Ferndale. The improvement began about three miles north of Bellingham and extended to approximately the city limits of Ferndale. A part of the improvement was on what was known as road 57, and another portion was on what was known as road 56. Road 57 extends north and south. Road 56 extends east and west. These roads cross each other at right angles. Before making the improvement, a small tract of ground was acquired by the county at the southwest corner of the intersection of these two roads, in order that, on the permanent improvement, there would be a curve at that point, rather than a right-angle turn. The lands of the respondents are to the northeast of the intersection of the two roads mentioned, being north of 56, extending east from the intersection, and east of 57, extending north from the intersection. The improvement was made under what may be referred to as the permanent highway law. Chapter XXII-B, Title XLI, Rem. Code (§ 5879-1 *et seq.*) The improvement was initiated by a petition signed by the owners of land fronting on the highway on which the improvement was sought. An examination of the drawing on the previous page, which is not drawn to scale, and is inserted for illustrative purposes only, will tend to clarify the facts as stated.

The road over which the improvement was made is referred to on the plat as the northwest diagonal road. The plat also shows where the improvement was made, the location of the lands of the respondents, a portion of roads 56 and 57, and the intersection thereof.

The first question is whether the petition filed with the county commissioners was sufficient to give that board jurisdiction to fix the boundaries of the assessment district within the limits prescribed by the statute and charge the property therein with the cost of the improvement. The respondents claim that the petition should have been signed by the owners of two-thirds of the lands within the district. The petition was signed by the owners of two-thirds of the lineal feet of

the lands, other than lands of the state or of the United States, adjoining and touching upon the highway, but was not signed by the owners of two-thirds of the land embraced in the assessment district. Section 5879-2, Rem. Code, provides:

"The owners of two-thirds of the lineal feet of lands, other than lands of the state or the United States, fronting upon any public highway or section thereof in any county may present to the board of county commissioners a petition setting forth that the petitioners are such owners, and that they desire that such highway or section thereof be improved under the provisions of this act."

Under the subsequent sections of the same act, the board of county commissioners, upon receipt of a petition, or "upon its own motion," may pass a resolution for the improvement of any public road or highway or section thereof described in such resolution, "under the provisions of this act." After the resolution is passed, the county commissioners are required to transmit a certified copy thereof to the state highway commissioner. That official, when the resolution is received, is required to investigate and determine whether the highway or section thereof sought to be improved is of sufficient public importance to merit the improvement. The highway commissioner is required to certify his approval or disapproval of the resolution. After the resolution is approved by the highway commissioner, the county engineer is required to perform all engineering in connection with and supervise the improvement contemplated. The county engineer is authorized to make such recommendations concerning deviation from existing lines as he shall deem of advantage to obtain a shorter and more direct route, or to otherwise improve the highway. Upon the completion of the profiles, maps, plans and specifications by the county engineer, a copy thereof must be transmitted to the state highway commissioner for his approval. After the plans and specifications have been approved by the state highway commissioner, the board of county commission-

ers is authorized to advertise for bids and contract for the construction of the proposed improvement. After the highway has been improved or constructed pursuant to the petition above referred to, the county engineer is required to prepare an assessment roll in accordance with § 10 of the permanent highway law (Rem. Code, § 5879-10). The width of the assessment district is to be fixed by the board of county commissioners within the limits specified in this section.

Returning now to the immediate question above stated, it is apparent that the statute does not contemplate that the petition by which the improvement is initiated shall be signed by two-thirds of the owners of land which shall subsequently be included in the district. At the time the petition is prepared and presented to the county commissioners, which is the initial step, it cannot be known what the particular boundaries of the district may be, because these boundaries are to be fixed by the county commissioners after the improvement has been constructed in accordance with the statute, as above outlined in general terms. The section of the statute above quoted, which authorizes the petition, provides that the same shall be signed by the owners of two-thirds of the lineal feet of the lands, other than lands of the state or the United States, "fronting upon any public highway" which such petitioners desire to be improved. The petition in this case was signed by the owners of two-thirds of the lineal feet of lands, other than lands of the state or the United States, fronting upon the highway. It was not necessary, in order to confer jurisdiction upon the board of county commissioners to proceed, that the petition be signed by the owners of two-thirds of the property which would ultimately be within the assessment district. The statute provides for a hearing upon the assessment roll before the board of equalization, after due notice thereof shall have been given as provided. In response to the notice, the respondents in this case appeared before the board of equalization and objected to the assessment upon their property. There is no constitutional

prohibition against the legislature conferring upon the board of county commissioners the power to initiate the improvement without a petition. *Collins v. Ellensburg*, 68 Wash. 212, 122 Pac. 1010; *Redding v. Spokane*, 81 Wash. 263, 142 Pac. 664.

If the legislature had power to confer upon the county commissioners the right to initiate the improvement without a petition, it would seem to follow, as a matter of course, that there could be no constitutional objection against the initiating of the improvement by a petition signed by the owners of two-thirds of the lineal feet of the lands fronting upon the highway to be improved. It is true that the two cases cited are city cases, but the rule cannot be different, whether the improvement authorized by the legislature be a city street or a county highway.

The next question is whether the lands of the respondents are coterminous with the improvement and bordering thereon. The portion of the statute (Rem. Code, § 5879-10) which provides how the improvement district shall be constituted, and the boundaries thereof fixed, is as follows:

"The highway coterminous with the improvement shall be the center line through the district, and the bordering lands on each side and within a distance of not less than six hundred and sixty feet, and not more than three miles, such width to be fixed by the board of county commissioners, from the center line of said highway and coterminous with the construction work or improvement shall be included in and constitute the body of the improvement district and shall be subject to assessment to the extent above provided."

The board of county commissioners fixed the outer boundary of the district a distance of one and one-half (1½) miles from the improvement. This line runs parallel to the improvement and extends from one end thereof to the other, running straight when the highway is straight, and curving when the highway curves. By an examination of the plat above referred to, it will be seen that the respondents' lands are opposite the curve in the permanent improvement made at

the intersection of roads 56 and 57. The respondents' lands are on the convex side of the curve in the improvement, and within one and one-half (1½) miles thereof. Notwithstanding the fact that the highway curves, we think, within the contemplation of the statute, the respondents' lands border thereon. If lands on the convex side of the curve do not border upon the improvement, it would follow that lands on the concave side would not border thereon. If the curve were flattened out until it became a straight line, and the respondents' lands were still within a distance prescribed under the authority of the statute, there could be no question that they would be bordering lands. Whether the curve be so flat as to be almost a straight line, or more abrupt, can make no difference. The outer boundary of the improvement district is one and one-half (1½) miles from the center of the improvement, and runs exactly parallel thereto, including the curve. In our opinion, the lands of the respondents border upon the improvement and are within the cotermini thereof.

The third and last question is whether the assessment was made arbitrarily or upon a fundamentally wrong basis. There is no evidence in the record that the respondents' lands are not benefited to the extent to which they are assessed. Under the statute (Rem. Code, § 5879-10), the improvement district

"shall be divided longitudinally on each side of the center line of such highway, into three parts of equal width, which, beginning with the part abutting upon the highway, shall be known as the first, second and third subdivisions, respectively, of such improvement district."

It is further provided therein:

"The charge upon the several separate tracts or parcels of lands in each subdivision shall be assessed ratably on the basis of the special benefits according to the actual area within such subdivision; that is to say, the area within the first subdivision shall be assessed seven-fifteenths, the area within the second subdivision shall be assessed five-fifteenths, and the area within the third subdivision shall be assessed three-fifteenths

of the proportionate part of the cost assessed to the property in the assessment district. Each tract or parcel of land shall be assessed according to the relation of the area thereof to the total area within the subdivision wherein it is situated."

It will be noticed that this statute fixes three zones, or subdivisions, on each side of the improvement, and specifies the proportion that each shall bear of the cost assessed to the property in the district. Each tract or parcel of land in any one of the subdivisions is assessed according to the relation of the area thereof to the total area within that subdivision. The assessment in this case was made in exact accord with the provisions of this statute. The plan there provided for is a combination of the zone and area methods of assessment. As was stated in *Gerlach v. Spokane*, 68 Wash. 589, 124 Pac. 121:

"The method of distributing the cost, whether by front foot or by area or by a zone system, will not *ipso facto* invalidate the assessment."

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment to the effect that the respondents take nothing by the action.

ELLIS, C. J., CHADWICK, MORRIS, and PARKER, JJ., concur.