*In the Matter of the Assessment for the Establishment of* ROEDER AVENUE.[1]

*W. H. Abbott* and *Glen R. Madison,* for appellants.
*Walter B. Whitcomb,* for respondent.

PER CURIAM.—After the passage of certain preliminary ordinances, Bellingham, a first class city of Washington, filed, in the superior court for Whatcom county, a petition for the condemnation of the northeasterly fifty feet of block 103, according to the map

[1]Reported in 292 Pac. 113.

of New Whatcom tide lands, in order to acquire title thereto for the establishment and improvement of a public street, to wit, Roeder avenue. Later, a decree was entered condemning the fifty-foot strip as described in the proceedings, and awarding damages to the owners thereof. Subsequently, the court appointed three condemnation commissioners to make an assessment upon the property benefited by the proceeding for the purpose of raising the amount of money necessary to pay the compensation and the damages which had been awarded therein for the property taken and damaged, together with all costs of the proceeding and all further expenses, and to take all such other steps as should be necessary and proper in the premises according to law.

The three condemnation commissioners so appointed created an assessment roll and returned it into court. To that assessment roll, these appellants and others filed written objections, which, after a hearing thereon, were sustained, and the court ordered a re-assessment.

The reasons for ordering the re-assessment by the trial court appear to have been amply sound and valid, and need not be here set forth. The court, in ordering the re-assessment, specifically instructed the eminent domain commissioners in writing how to proceed with their duties, as follows:

"That the commissioners shall immediately proceed to enter upon their duties to make up and return to this court, and that they do make and return to this court, at their convenience a new assessment roll according to law, in the making of which assessment roll, the commissioners shall take into consideration all matters which will assist them in arriving as nearly as possible at the special benefits to be derived by the property benefited, such as valuation of property; area; use to which property may reasonably be put, omitting all elements of speculation. They will also

consider the object and purpose of the improvement and results accomplished thereby; the physical advantages or disadvantages attaching to any parcel of land affecting reasonable use and enjoyment of the improvement; and any and all other matters which in the judgment of the commissioners will assist them in determining the fair and equitable assessments which should be placed against the respective lots or parcels of land especially benefited by the improvement.''

Roeder avenue and certain other streets connecting therewith extend around the water front of Bellingham. These streets are occupied by the tracks of a certain railroad company under a franchise. Roeder avenue, westerly from F street, had never been improved, except that portion occupied by the railroad tracks, for which an earth fill had been made. A number of industries were located along Roeder avenue westerly from F street. A number of sites for other industries were available in that district. The lack of an improved street affording ingress and egress to the industries already located along the water front, and to others that might locate there, had been a matter of great concern, not only to the operators of the industries and property owners, but also to the officials of the city. Unsuccessful efforts had been made to provide a street, or at least a roadway, along Roeder avenue. Roeder avenue, immediately west of F street for some distance, was sixty feet in width, and, by reason of the railroad tracks occupying the same, the city council concluded that it was necessary to widen the street, and a portion of the property to widen it was obtained from the Whatcom Falls Mill Company, one of appellants herein. Tide land lot 103 lies immediately to the west and southward of the junction of F street and Roeder avenue, and it was deemed necessary to secure the northeasterly fifty feet of this lot

for the purpose of making uniform the width of Roeder avenue.

Appellants concede that the condemnation commissioners spent considerable time in the preparation of their amended assessment roll. They laid out a somewhat elaborate system of districts and zones. They held a number of private meetings of their own, and interviewed some of the owners of the real estate included in the enlarged district on which their amended assessment roll was based. The enlarged improvement district, under the re-assessment, was divided into three districts, and each of the three districts was again subdivided into three zones. The first district included property adjacent to the improvement itself, consisting, principally, of tide land between two waterways. In this district, the property nearest the shore along which the improvement ran was placed in the first zone and the property therein assessed at the rate of $6.75 per lot. Throughout the enlarged improvement district, a lot was considered as five thousand square feet. The second zone included property somewhat further removed from the improvement and nearer the harbor line. In that zone, property was assessed at the rate of $5.25 per lot. The third zone of the first district extended to the near harbor line, and property in it was assessed at $2.50 per lot.

The second district comprised what was called the "business district" of the city, and embraces more territory than in the original roll as placed in that district. This second district is also subdivided into three zones. The first zone embraces certain blocks in which the property is assessed at $6.70 per lot. The second zone comprises certain blocks and property more remote from the improvement, and is assessed at $4.95 per lot. All other property in the business district of the second district comprises somewhat more remote

property, and constitutes the third zone of that district. Property in it is assessed at the rate of $1.60 per lot.

The third district embraces all the remaining property in the enlarged district, being the property easterly of a certain waterway and southerly from a certain street. This third district is also divided into three zones. Lots in the first zone are assessed at $4.90 each. Lots in the second zone are assessed at $3.10 each. Lots in the third zone are assessed at $1.60 each.

From the order approving the re-assessment roll by the trial court, the Morrison Mill Company and the Whatcom Falls Mill Company have appealed.

The only question involved on this appeal is whether or not the eminent domain commissioners, in making up their amended assessment roll, exercised their judgment and discretion, and otherwise complied with the laws of the state and the instructions of the trial court in making the re-assessment. Appellants base their contentions entirely upon the order of the lower court and the law as they construe it. Appellants also contend that there should have been a finding of benefits to the city at large, and an assessment against the general fund of the city. All the testimony in the record, including that taken at the hearing on the first assessment roll, has been read and considered.

The long established rule in this state is that the report of the commissioners, confirmed by the trial court, will not be disturbed unless the evidence so clearly preponderates against them as to indicate arbitrariness and manifest oppression. *In re Third, Fourth and Fifth Avenues*, 55 Wash. 519, 104 Pac. 799; *In re West Marginal Way*, 112 Wash. 418, 192 Pac. 961; *In re Sixth Avenue*, 155 Wash. 459, 284 Pac. 738.

The trial court, after hearing all the testimony and after having once ordered a re-casting of the assess-

ments, concluded, upon the re-assessment, that the roll made up by the condemnation commissioners was based upon special benefits only, and confirmed the same. The commissioners also found that there were no benefits to the public by reason of the improvement, and that no amount of the assessment for the expense of the improvement should be assessed against the. public (that is, the general fund of the city). There is no testimony contrary to that finding. Neither is there any testimony that appellants were not benefited to the amount of the assessments against their property. The sole contention of appellants in that respect is that the commissioners proceeded upon a fundamentally wrong basis by considering the area of these several properties; that is, upon the basis of a lot of five thousand square feet, and assessing an apparently flat rate of assessment against each lot in each zone.

One commissioner testified, and it was stipulated that the other two would testify to the same effect, that the amount assessed against each lot in each of the several zones represented the benefits that were actually received from the improvement by such property, and used the area, five thousand square feet, only for the purpose and as the basis of computing the actual amount of the benefit that the commission determined was received by each such piece of property; and that the amount of the assessment was not determined solely by area.

The division of the district into districts and zones has heretofore been determined to be entirely within the power of such condemnation commissioners. *Gerlach v. Spokane,* 68 Wash. 589, 124 Pac. 121; *Lindstrom v. McMillan,* 98 Wash. 608, 168 Pac. 463.

In the last cited case, it was held that the method of distributing the cost, whether by front foot, or by

area, or by a zone system, will not *ipso facto* invalidate the assessment. Compare *Towers v. Tacoma,* 151 Wash. 577, 276 Pac. 888.

The case of the *Town of Elma v. Carney,* 9 Wash. 466, 37 Pac. 707, strongly relied upon by appellants, is by no means parallel with the instant case. In that case, it was shown that the assessment was made solely upon the basis of the number of lineal feet of property fronting on the improvement, and not in accord with benefits. We there held that there had been an absolute failure on the part of the assessing authorities to comply with their duties; in other words, that there had been a lack of the exercise of any judgment and discretion by the assessing body.

In this case, under the evidence, the law was substantially complied with.

■ Appellants devote some argument to a contention that the assessed valuation of the property within the limits of the district should have been considered by the condemnation commissioners upon a showing of the assessed valuation of certain properties, together with the amount of assessments placed against the same by the commissioners. This contention has been decided adversely in *East Hoquiam Co. v. Hoquiam,* 90 Wash. 210, 155 Pac. 754, and in *In re Sixth Avenue, supra.*

■ Concerning assessments to the general fund, appellants quote the ordinance providing for this improvement, in part, as follows:

"That any part of the compensation, damages or costs that are not finally assessed against said property benefited shall be paid from the general fund of the city."

From this it is argued that, under all the conditions surrounding this improvement as shown, the court should have directed the commissioners to assess a

portion of the special benefits to the general fund of the city.

The finding made by the commissioners above quoted, in the absence of any showing on behalf of appellants to the contrary, seems to be conclusive upon that contention.

We find no error, and the judgment is therefore affirmed.

[No. 22364.   Department Two.   October 8, 1930.]