[No. 22382. *En Banc.* February 13, 1931.]

THE STATE OF WASHINGTON, *on the Relation of Gust Larson, Respondent,* v. THE CITY OF VANCOUVER *et al., Appellants.*[1]

*D. Elwood Caples,* for appellants.

*Gordon Powers* and *McMaster, Hall & Schaefer,* for respondent.

*Glenn R. Madison, amicus curiae.*

TOLMAN, C. J.—By this action, respondent, as relator, sought, and was, by the judgment appealed from, awarded, a writ of mandate compelling the appellant city to make a reassessment in a certain local

[1] Reported in 295 Pac. 947.

improvement district, to provide funds to pay a deficiency held to be due to the relator as a holder of certain local improvement bonds.

The facts are not in dispute, and, for present purposes, may be briefly summarized as follows: During the year 1913, the appellant city authorized certain street improvements, created a local improvement district, and levied special assessments in the amount of $13,779.47 on the property found to be specially benefited, which amount so levied was the exact and actual amount of the cost of the work. The special assessments were payable in ten annual installments, bearing interest at the rate of seven per cent per annum. Four thousand six hundred forty-seven dollars and ninety-three cents of the amount so assessed was paid in cash and applied in payment of the cost of the improvement.

The remainder of the cost, amounting to $9,131.54, was paid by issuing bonds aggregating that amount, and delivering them to the contractor who performed the work. These bonds were numbered from one to nineteen, inclusive, all except the last being for five hundred dollars each, and bore interest at the rate of seven per cent per annum, payable annually on the date when the annual installment and the interest was payable on the local assessments.

Relator is the holder of bonds numbered 16, 17 and 18, all bonds of a lesser number having been paid and redeemed. Bonds numbered 16, 17, 18 and 19 have not been called for payment, and no part has been paid except the sum of five hundred dollars, being the face value of each, which amount was paid on June 8, 1927, and was received as payment of the principal, under the agreement that such payment should in no manner affect the rights of the relator to collect and receive

interest on the bonds held by him. All interest on these bonds was paid in full up to November 20, 1923, and no interest accruing since that date has been paid.

Had the assessments been paid promptly as they became due, together with the interest thereon, there would have been sufficient funds to pay all bonds, both principal and interest. The deficit arose through the sale of property, subject to the assessment, for general taxes, and, to some extent, by the payment of assessments at such time as to cause the interest collected upon the assessments to be less than the interest accruing upon the bonds. At any rate, as we have seen, the assessment, when made, was sufficient, and but just sufficient, if the whole had been paid in accordance with the terms of the ordinance, to provide the necessary funds to retire the bonds, both principal and interest.

The relator was, of course, fully advised as to the status of the assessment and its terms. He made no attempt to prevent, or redeem from, the sale of the assessed property upon general tax foreclosure, nor did he ever attempt to foreclose upon any of the property in the district for the purpose of collecting his bonds.

It is admitted that the city treasurer duly and regularly paid off the bonds as rapidly as sufficient funds accumulated from the payment of assessments, and, as we have already said, the shortage resulted from the sale of some of the property under general tax foreclosure, and because of the times at which payments of installments of assessments were made. The irregular payments, in point of time, causing funds to remain idle in the hands of the city treasurer during certain periods without earning interest, and awaiting the accumulation of sufficient amounts to redeem

bonds; thus made it necessary for the treasurer to pay out money received as principal to meet interest due on outstanding bonds.

The sole question, therefore, is whether, under such facts, a reassessment can be ordered to make up the deficiency of interest.

The trial court followed the decision of this court in *Loveless v. Chehalis,* 133 Wash. 33, 233 Pac. 301, as he was bound to do, and, if the judgment appealed from is wrong, we, and not the trial court, must bear the onus, since the cases cannot be distinguished upon the facts.

We now think we reached a wrong result in the *Loveless* case, through placing undue emphasis upon one or two sections of the statute relating to local assessments, and disregarding other sections which should also have been considered in connection therewith.

In arriving at the legislative intent, we should begin with the first section of the statute which deals with the assessment roll, which is Rem. Comp. Stat., § 9373. This section provides for the filing of the assessment roll, the fixing of the date for a hearing thereon, and the giving of notice to "all persons who may desire to object thereto to make such objections in writing," etc., and

"The council or other legislative body of such city or town, at the time fixed for hearing objections to the confirmation of said roll, or at such time or times as said hearing may be adjourned to, shall have power to correct, revise, raise, lower, change or modify such roll, or any part thereof, and to set aside such roll and order that such assessment be made *de novo,* as to such body shall appear equitable and just, and then shall confirm the same by ordinance. All objections shall state clearly the grounds of objections; and objections not made within the time and in the manner herein prescribed shall be conclusively presumed to have been waived."

Section 9374 provides for an appeal to the courts for a review of the action of council.

Section 9375 reads:

"Whenever any assessment-roll for local improvements shall have been confirmed by the council or other legislative body of such city or town as herein provided, the regularity, validity and correctness of the proceedings relating to such improvement and to the assessment therefor, including the action of the council upon such assessment-roll and the confirmation thereof, shall be conclusive in all things upon all parties, and cannot in any manner be contested or questioned in any proceeding whatsoever by any person not filing written objections to such roll in the manner and within the time provided in this act, and not appealing from the action of the council in confirming such assessment-roll in the manner and within the time in this act provided. No proceeding of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any such assessment, or the sale of any property to pay such assessment, or any certificate of delinquency issued therefor, or the foreclosure of any lien issued therefor: Provided, that this section shall not be construed as prohibiting the bringing of injunction proceedings to prevent the sale of any real estate upon the grounds (1) that the property about to be sold does not appear upon the assessment-roll, or (2) that said assessment has been paid."

Thus, the legislature recognized the necessity for certainty in these matters, and provided very definitely that, after due confirmation, the amount and sufficiency of the assessment could no longer be questioned, except in the event of invalidity, or the like, as we shall later see.

Then follow sections relating to time of payment, interest, penalty, sales, redemption, and the like, and thus we come to § 9395, which was emphasized in the *Loveless* case. From that section we quote:

"In all cases of special assessments for local improvements, wherein said assessments have failed to be valid in whole or in part for want of form or insufficiency, informality, or irregularity or nonconformance with the provisions of law, charter or ordinance governing such assessments in any city or town, the council of any such city or town shall have power to reassess such assessments and to enforce their collection in accordance with the provisions of law and ordinance existing at the time the reassessment is made. Whenever, on account of any mistake, inadvertence or other cause, the amount assessed shall not be sufficient to pay the cost and expense of the improvement made and enjoyed by the owners of the property in the assessment district where the same is made, the council of such city or town is authorized and directed to make reassessments. . . .

"Whenever any assessment for any local improvement in any city or town, whether the same be an original assessment, assessment upon omitted property, supplemental assessment or reassessment, heretofore or hereafter made, has been or may hereafter be declared void and its enforcement [refused] by any court, or for any cause whatever has been heretofore or hereafter may be set aside, annulled or declared void by any court, either directly or by virtue of any decision of such court, the council of such city or town shall make a new assessment or reassessment upon the property which has been or will be benefited by such local improvement, based upon the actual cost of such improvement at the time of its completion."

Section 9396 covers the manner of reassessing, and also provides:

". . . Provided, that such assessment shall be for an amount which shall not exceed the actual cost and expense of the improvement, together with the accrued interest thereon, it being the true intent and meaning of this act to make the cost and expense of local improvements payable by the property specially benefited thereby, notwithstanding the proceedings of the council, board of public works or other board, offi-

cer or authority of such city or town may be found irregular or defective, whether jurisdictional or otherwise; when such assessment is completed, all sums paid on the former attempted assessment shall be credited to the property on account of which the same were paid.''

These last two sections of the statute, when read in connection with the preceding sections, rather clearly indicate the legislative intent that the assessment-roll, as confirmed, shall be final and binding upon all parties, save only in cases where the assessment may be held to be invalid, or there is some error or mistake which renders the assessment uncollectible or insufficient from the beginning. The clause, ''whenever on account of mistake, inadvertence or other cause, the amount assessed shall not be sufficient to pay the cost and expense of the improvement,'' relates necessarily to the causes therein before enumerated, or some cause of like nature, and cannot be held to relate to subsequent defaults of the property owners which are not to be anticipated.

Should the assessing body undertake to provide in advance for possible defaults by increasing the amount of the assessment above the cost and expense of the improvement, it would at once be met by an objection which would be fatal. And, taking the statute as a whole, we can see no way to provide for the possibilities of default, save only by increasing the interest on the deferred installments of the assessment over the interest rate fixed in the bonds, which the statute permits to be done.

Here was an assessment never held invalid, sufficient in amount to pay the cost and expense of the improvement if property owners paid as the ordinance required, which was duly confirmed, and became binding upon the property owners and the contractor

alike; and his successor in interest, the respondent, since the bonds are payable only out of a special fund and are non-negotiable, is likewise bound.

We are satisfied that the case of *Loveless v. Chehalis, supra,* must be, and it is, overruled, and the judgment appealed from is reversed with directions to dismiss the action.

MILLARD, MAIN, MITCHELL, BEALS, BEELER, and PARKER, JJ., concur.

HOLCOMB, J. (concurring)—I concur in the result reached herein. But I protest against overruling *Loveless v. Chehalis,* 133 Wash. 33, 233 Pac. 301, which is a judicial vacillation entirely needless. This case is decidedly distinguishable upon the law and the facts, the statutes not being set forth in full in the prevailing opinion. From that part of the decision I dissent.

FULLERTON, J., concurs with HOLCOMB, J.