[No. 27435. Department One. August 8, 1939.]

THE STATE OF WASHINGTON, *on the Relation of Rosa Johnson, Individually and as Guardian, Appellant,* v. THE CITY OF DAYTON *et al., Respondents.*[1]

*John C. Hurspool,* for appellant.

*R. M. Sturdevant,* for respondents.

[1]Reported in 93 P. (2d) 909.

ROBINSON, J.—This case is submitted upon an agreed statement of facts.

In 1923, the council of the city of Dayton passed an ordinance providing for the paving of one of its streets on the special assessment plan. The ordinance created a local improvement district and authorized the issuance of local improvement bonds to the contractor in payment of the cost of the improvement. Notice was given of hearing on the assessment roll, and thereafter the assessment roll, no objections having been filed, was approved and confirmed by the city council. The improvement was completed and local improvement fund bonds issued to the contractor in payment of the cost of the improvement. The bonds were in denominations of five hundred dollars each, except that the first bond was for $630.65, and were numbered consecutively from 1 to 32. They were in usual form and contained on their face the declaration required by the Laws of 1911, chapter 98, p. 474, § 52, Rem. Rev. Stat., § 9405 [P. C. § 1040].

Relator is the owner and holder of bonds Nos. 28 and 29, and, as guardian of the estate of Estel Mortimer, a minor, is the holder of bond No. 27. Bonds Nos. 1 to 26, inclusive, have been paid. All assessments on property in the local improvement district have been paid, except those hereinafter mentioned. There is not a sufficient amount in the local improvement fund to pay the bonds remaining unpaid, the only money in the fund being the sum of sixty dollars.

The deficiency arises because the assessments against certain lots and parcels of land were not paid. Two lots were assessed at $266.22 and $65.16, respectively. These assessments were not paid, nor were the general taxes, and the general tax liens were foreclosed and the property struck off to the county. Three lots were assessed at $78.50, $120.00, and $1,198.80, respectively.

These assessments were not paid, and the assessment liens were foreclosed and the property struck off to the city.

The lot assessed for $1,198.80 is on a steep hillside. It appears from the agreed statement that the value of this lot, at the time the assessment was made, was fifty dollars, and that the benefits received from the improvement did not exceed eighty-five dollars, and that the present value of the lot is one hundred and thirty-five dollars. The assessment, together with the interest that has accrued, now amounts to $2,341.33.

If all of the assessments, with interest, had been paid, there would have been funds sufficient to pay all of the bonds. Relator brought this action for a writ of mandate requiring respondents to reassess the property in the local improvement district to provide funds for the payment of the bonds held by her. From a judgment denying the application for writ of mandate, relator appeals.

Appellant contends that, under the provisions of the local improvement statute (Laws of 1911, chapter 98, p. 441, as amended), the property is subject to reassessment to provide funds for the payment of the bonds held by her, and she relies particularly upon the following language contained in § 42, p. 468 (Rem. Rev. Stat., § 9395 [P. C. § 1030]):

" . . . Whenever, on account of any mistake, inadvertence or other cause, the amount assessed shall not be sufficient to pay the cost and expense of the improvement made and enjoyed by the owners of the property in the assessment district where the same is made, the council of such city or town is authorized and directed to make reassessments on all the property in said assessment district to pay for such improvement; . . ."

In the case of *State ex rel. Larson v. Vancouver*, 160 Wash. 655, 295 Pac. 947, the court pointed out that

this section must be construed with reference to the other sections of the act, and particularly § 23, p. 455 (Rem. Rev. Stat., § 9375 [P. C. § 1011]), which provides:

"Whenever any assessment-roll for local improvements shall have been confirmed by the council or other legislative body of such city or town as herein provided, the regularity, validity and correctness of the proceedings relating to such improvement, and to the assessment therefor, including the action of the council upon such assessment-roll and the confirmation thereof, shall be conclusive in all things upon all parties, and cannot in any manner be contested or questioned in any proceeding whatsoever by any person not filing written objections to such roll in the manner and within the time provided in this act, and not appealing from the action of the council in confirming such assessment-roll in the manner and within the time in this act provided. No proceeding of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any such assessment, or the sale of any property to pay such assessment, or any certificate of delinquency issued therefor, or the foreclosure of any lien issued therefor: Provided, that this section shall not be construed as prohibiting the bringing of injunction proceedings to prevent the sale of any real estate upon the grounds (1) that the property about to be sold does not appear upon the assessment-roll, or (2) that said assessment has been paid."

The court held, overruling *Loveless v. Chehalis*, 133 Wash. 33, 233 Pac. 301, that the confirmation of the assessment roll was conclusive upon the contractor as well as the property owners, saying:

"Thus, the legislature recognized the necessity for certainty in these matters, and provided very definitely that, after due confirmation, the amount and sufficiency of the assessment could no longer be questioned, except in the event of invalidity, or the like, as we shall later see."

Later, in the opinion, the court said, at page 661:

"These last two sections of the statute [§§ 9395 and 9396], when read in connection with the preceding sections, rather clearly indicate the legislative intent that the assessment-roll, as confirmed, shall be final and binding upon all parties, save only in cases where the assessment may be held to be invalid, or there is some error or mistake which renders the assessment uncollectible or insufficient from the beginning. The clause, 'whenever on account of mistake, inadvertence or other cause, the amount assessed shall not be sufficient to pay the cost and expense of the improvement,' relates necessarily to the causes therein before enumerated, or some cause of like nature, and cannot be held to relate to subsequent defaults of the property owners which are not to be anticipated. . . .

"Here was an assessment never held invalid, sufficient in amount to pay the cost and expense of the improvement *if property owners paid as the ordinance required,* which was duly confirmed, and became binding upon the property owners and the contractor alike; and his successor in interest, the respondent, since the bonds are payable only out of a special fund and are non-negotiable, is likewise bound." (Italics ours.)

Appellant's counsel, in an attempt to distinguish the instant case from the *Larson* case says, in his brief:

"If the assessment in the *Larson* case was sufficient to pay the cost of the improvement, then that statement cannot be applied to the present case where the assessment was insufficient to pay such cost, and this is the distinction between the two quoted paragraphs, and a distinction which the trial court ignored. There seems to have been no question in the *Larson* case but that the assessment was sufficient at the beginning, the action to compel a reassessment was brought on that theory and that the insufficiency arose from subsequent conditions. Here the insufficiency existed from the moment the assessment was levied.

"It is true the language used by the court in the last quotation in saying, 'if the property owners paid as the ordinance required' tends to confuse the matter."

The words, "if property owners paid as the ordinance required," do not tend to confuse the matter; on the contrary, they make it plain that, when the court said, "Here was an assessment . . . sufficient in amount to pay the cost and expense of the improvement," it meant an assessment, equal in amount, at the time made, to the cost of the improvement. That is, if an improvement costs ten thousand dollars, and ten thousand dollars is assessed when the improvement is made, then the amount assessed is "sufficient," within the meaning of § 9395, even though it turns out that a lesser amount is ultimately realized, due to the failure of property owners to pay.

In the case at bar, the improvement was made sixteen years ago, and the amount assessed, was, as in the *Larson* case, sufficient to pay the cost of the improvement; but, due to the failure of some of the property owners to pay their assessments, the fund proved insufficient to pay the bonds.

It is a matter of common knowledge that hundreds of improvement districts throughout the state have failed to pay out for the same reason, and that many of them overlap. The consequences of holding in this case that the city council may be required by mandate to make a reassessment to make up the deficiency, upon the ground that the amount assessed was not sufficient within the meaning of § 9395, would be staggering. It would constitute a precedent for a reassessment of thousands upon thousands of pieces of property which have been dealt with for years upon the understanding that they were free and clear of all assessments. In the larger cities, where there has been much overlapping, there would doubtless be reassessments for more than one improvement.

The appellant misinterprets the opinion in the *Larson* case, as well as the statute itself. The statute

does not provide for reassessment when the assessment as made was sufficient to pay the cost, but a deficiency resulted due to the failure of some of the property owners to pay.

■ Appellant also contends that the assessment as to the side hill lot was void, and that the assessment, considered as a whole, was, therefore, "insufficient" from the beginning. It is said to be void because the lot was assessed at $1,198.80, whereas the benefit it received was not more than eighty-five dollars. Appellant cites *Horton Inv. Co. v. Seattle,* 94 Wash. 556, 162 Pac. 989; *Towers v. Tacoma,* 151 Wash. 577, 276 Pac. 888; and *In re Sixth Avenue,* 155 Wash. 459, 284 Pac. 738, in which cases it was held that assessments for local improvements must be made according to the benefits received by each property. But all of these are cases wherein the owner of a specific piece of property was appealing from the order confirming the assessment thereon.

It is too late in this case to question the assessments made on specific pieces of property. Had the owner of the side hill lot filed objections upon that ground, and they had been disallowed, and he had then appealed from the order confirming the assessment roll, doubtless that rule would have been applied. But he did not do so; and, by the terms of § 23, chapter 98, Laws of 1911 (Rem. Rev. Stat., § 9375), the assessment became "conclusive in all things upon all parties," including, as is held in *State ex rel. Larson v. Vancouver,* the contractor and his successor in interest (in this case, the appellant relator), since the bonds are non-negotiable and payable out of a special fund.

■ The appellant further contends that the method of assessment employed in this instance must be held to be unlawful and invalid because it took no account

of the principle that an assessment on a particular piece of property should be strictly proportionate to the benefits received. The plan of the assessment is set out in the agreed statement of facts, as follows:

"(13) That the method of determining the amount of assessment against each lot or parcel of land for such local improvement district, was as follows: The total cost of improvement was apportioned one-half to the property lying on each side of the center line of Sixth Street. The number of square feet was then determined and the assessment was made against it in proportion to the total number of square feet on that side of the street to the center of each block, respectively, and apportioned according to the zoning method upon the ratio fixed by statute, to-wit: Rem. Revised Statute of Washington, Section No. 9365."

But the fact that both the front foot and zone methods of assessment sometimes result in gross inequalities does not make such methods of assessment *ipso facto* void, where, as under our statutes, the procedure affords to each individual property owner his day in court and the right to file written objections and to appeal in case they are overruled. In speaking of the front foot method in *Sheley v. Detroit*, 45 Mich. 431, 8 N. W. 52, a case decided as early as 1881, in which it was contended that an assessment according to frontage was not an assessment in proportion to benefits received and, therefore, in violation of constitutional principles, Judge Cooley, an authority of the very first rank on American constitutional law, in stating the opinion of the court, said:

"We might fill pages with the names of cases decided in other states which have sustained assessments for improving streets, though the apportionment of the cost was made on the same basis as the one before us. If anything can be regarded as settled in municipal law in this country, the power of the legislature to permit such assessments and to direct an apportionment of the

cost by frontage, should by this time be considered as no longer open to controversy. Writers on constitutional law, on municipal law, and on the law of taxation have collected the cases, and have recognized the principle as settled."

The principle must be regarded as settled in this state. We quote from *Gerlach v. Spokane*, 68 Wash. 589, 124 Pac. 121:

"The method of distributing the cost, whether by front foot or by area or by a zone system, will not *ipso facto* invalidate the assessment."

This statement is quoted with approval in *Lindstrom v. McMillan*, 98 Wash. 608, 168 Pac. 463, and again approved in the *per curiam* opinion in *In re Roeder Avenue*, 159 Wash. 32, 292 Pac. 113.

In considering this matter, we have had the benefit and advantage of a most useful memorandum opinion prepared by the trial judge and made a part of the record in the cause. We agree with his conclusion that there are no facts or circumstances in this case which differentiate it from the case of *State ex rel. Larson v. Vancouver*, 160 Wash. 655, 295 Pac. 947.

The judgment denying the application for the writ and dismissing the action is affirmed.

BLAKE, C. J., MAIN, STEINERT, and JEFFERS, JJ., concur.