(No. 6898    March 27, 1942)

J. C. MAGUIRE, Trustee for Constance Smurthwaite Maguire, Respondent, v. WESTERMAN WHILLOCK, Mayor of Boise City, A. A. WALKER, SAM S. GRIFFIN, M. S. PARKER and T. J. JONES, JR., Councilmen and constituting the Common Council of Boise City, Idaho, Appellants.

(124 Pac. (2d) 248)

C. Stanley Skiles for Appellants.

Maurice H. Greene and James W. Blaine, for Respondent.

GIVENS, C.J.—In the trial court respondent, trustee for the owner of all the remaining unpaid bonds of the special or local improvement district involved, successfully sued out a writ of mandamus to compel appellant to reassess, under the second paragraph of section 49-2726 I. C. A.,[1] the property in the district to recoup, in the

[1] Whenever, for any cause, mistake or inadvertence the amount assessed shall not be sufficient to pay the cost of the improvement made and enjoyed by owners of property in the local assessment district where the same is made, it shall be lawful, and the city council or trustees or other authorized board or body is hereby

first cause of action, a claimed mistaken or inadvertent deficiency of $2796.55 in the assessment, security for the payment of the principal of the district's bonds, and in the second cause $3220.20 asserted rightful interest thereon.

Appellants unavailingly urged that mandamus was the wrong remedy; that there was no deficiency in fact or in law, and if there was, respondent was charged with knowledge and notice thereof barring his action for relief, and that both causes of the action are barred by the statute of limitations.

Respondent introduced all the city's records of the district, and the testimony of respondent as to the work performed, receipt of warrants therefor, and preliminary negotiations culminating in the exchange of warrants for bonds, and of an expert accountant analyzing the above records and financial transactions. Appellant introduced no evidence. The evidence is uncontradicted in that no witness disputed another. It is in minor particulars somewhat confusing, and different conclusions or inferences could in some instances be drawn. The learned trial judge ordered a reassessment against all property in the district except that upon which the full assessment had been paid prior to October 1, 1926. No assignment of error challenges this segregation. The trial court's meticulous, substantiated findings disclose the following desultory and checkered history of this district.

All preliminary proceedings for the organization of the district, initiated March 3, 1925, were correct, and the assessment roll of $25,347.78 was approved August 4, 1926, to cover construction cost, $22,001.68, engineering inspection and supervision, $2,172.18, advertising, clerk's costs, incidental engineering, printing, etc., $473.92, and $700 interest on interim warrants to October 1. The construction contract for $22,001.68 was let to J. C. Maguire Construction Co., June 23, 1926, and the project com-

directed and authorized to make reassessments on all the property in said local assessment district sufficient to pay for such improvement, such reassessment to be made and collected in accordance with the provisions of the law or ordinance existing at the time of its levy."

pleted. By October of the same year, interim warrants had been issued in payment of charges against the district in the amount of $24,384.86. Pursuant to notice authorized by the council and given by the city clerk[2] certain property owners prior to October 1, 1926, paid $2952.39, their assessments in full. The clerk (notwithstanding the specific provisions of the statutes covering local or special improvement districts [49-2715 and 49-2721] and correlated provisions [61-1002, 61-1017, 61-1901], the interpretation thereof [*Veatch v. City of Moscow*, 24 Ida. 461, at 465, 134 Pac. 551], the express provisions of ordinance 1430 of May 26, 1925, establishing the district,[3] and the notice, supra, as ordered by the council and given by the clerk) between October 1, 1926, and November 30, 1928, when the bonds in question were finally issued and negotiated, accepted after October 1, 1926, from private property owners of the district $2736.58, payments of their assessments *without penalty or interest thereon.*

---

[2] "Notice is further hereby given that the owner of any piece of property liable for any special assessments made under the provisions of Ordinance No. 1430 of Boise City, adopted and approved the 26th day of May, 1925, the same being an ordinance levying assessments in Local Resurfacing Improvement District No. 1 of Boise City, Idaho (reference to which is hereby made for greater certainty) may redeem his property from such liability by paying the entire sum chargeable against his property at any time between the 1st day of September, 1926, and the 1st day of October, 1926.

If payment be made on or before the 1st day of October, 1926, no penalty interest or cost will be collected. If payment be made after the 1st day of October, 1926, the owner may redeem his property from such liability by paying all the installments of the assessment with interest at the rate of not to exceed 7 per cent (7%) per annum from the date of the issuance of said bonds, hereafter to be authorized by ordinance to the time of the maturity of last installment of said bonds." (Plaintiff's Exhibit 6, p. 80.)

[3] SECTION 7. That all assessments hereinbefore specified shall be known as 'Special Assessments for Improvements,' and shall be levied and collected as separate taxes, in addition to the taxes for general revenue purposes, and if not paid to the City Clerk by property owners when notified as requested by law, same shall become delinquent, and penalty of ten per cent (10%) shall be added, and said assessment or installment, together with the penalty, shall be certified to the tax collector of Ada County, Idaho, and be by him placed on the tax roll for collection, subject to the same penalties and collected in the same manner as other city taxes."

Whatever the penalties or interest properly were, there should have been at least a charge for interest equal to that payable upon the warrants, namely, 7%. The clerk likewise accepted from the city for its contributions for street intersections and charges against Julia Davis Park, municipally owned, amounting to $6380.93. The amount of interest provided for in the original assessment of $700 was insufficient to pay the interest of 7%, amounting to $3760.47, on the interim warrants since they were not all paid until November 30, 1928, instead of October 1, 1926, as originally contemplated and provided for. Thus no levy was made against the property owners who paid after October 1, 1926, the last day they were legally entitled to pay only their full assessment, i.e., without penalty or interest, nor were interest charges as such made against the other property owners to pay the interest on these interim warrants.

All of the above payments made by the city and property owners were applied on the payment of such warrants and interest thereon, leaving, November 30, 1928, when the bonds were disposed of, a warrant indebtedness of principal and interest amounting to $16,185.77. $13,-278.88 was received from the sale of the bonds, to which amount the assessment roll on the face thereof had been reduced by debiting against it assessments paid June, 1928. $110.34, collected prior to May 1, 1928, was in the bond redemption fund. There was thus on the face of the roll only a legitimate total on November 30, 1928, of $13,-389.22 with which to retire the warrant indebtedness of $16,185.77 as required by 49-2717. The clerk paid the warrant indebtedness by finagling $969.93 from the Treasurer's Investment Fund, which had no connection whatever with the district involved herein; accrued interest on the bonds of $308.14, which she considered had accumulated and which she required the purchaser to pay; and the collections from an installment assessment made by her June 1, 1928, of $1518.48, and which was deducted from the assessment roll. This assessment should have been for the payment of bonds, but she paid warrants therewith. Thus the actual amount of the assessment roll standing as security for the payment of bonds No-

vember 30, 1928, was short $2796.55, the basis of respondent's first cause of action.

> "Oh, what a tangled web we weave
> When first we practise to deceive."—*Scott.*

Bonds to the amount of $13,278.88 were issued and sold November 30, 1928, to J. C. Maguire Co., really exchanged with the money above mentioned, for the amount of warrants outstanding. Later the company was dissolved and these bonds distributed to respondent's cestui que trust, his wife, for her stock in the company. Twenty-six bonds were for $500 each and the 27th for $278.88, all due on or before November 30, 1938. Bond No. 1 was paid August 30, 1930, bond No. 6 was paid July 7, 1936, and bond Nos. 2 to 5 were paid September 15, 1936. All interest was paid in full on presentation of coupons until 1937.

The city clerk embezzled from the funds of this district $2585.87, which was recovered in a separate action prior to the one herein by respondent against appellant, and thereby bonds 7 to 11 and $85.87 on bond 12 were paid January, 1939. There thus remain in respondent's possession 16 bonds, 14 bonds in the denomination of $500 and one bond in the denomination of $278.88, and $414.13 due on bond No. 12, or a total of $7693.01. Thus the reassessment of $2796.55 if paid in full, which it may not be and for which failure respondent will have no recourse, will leave $4896.46 of the principal of the bonds unpaid.

In limine, appellant asserted at the oral argument that the deficiency in this assessment roll arose partially, if not entirely, because of the cancellation of $3071.08 thereof, by sale for delinquent taxes to the county of a portion of the property in the district. This point as such is not in appellant's specifications of error, nor is the matter argued in its brief. The dates of these cancellations or tax sales are not shown nor is there any analysis indicating such pyramiding of this amount as to wipe out the total difference between the amount actually paid on the bonded indebtedness to date of $5585.87, and $13,278.-88, or $7693.01.

Appellant urges that respondent's cause of action, if any, accrued at the time the roll was first short, if at all,

namely, November 30, 1928, and it is barred by sections 5-216, 5-217, 5-218, 5-222, and 5-224 I. C. A.

The limited nature of special improvement district bonds is well known and needs no reiteration, merely mental retention as we proceed.[4]

The record shows and the court found that respondent had no actual notice of this deficiency and inadequacy of the assessment roll until March 4, 1937. Suit was commenced September 22, 1938. The shortest length of time in any of the statutes of limitations urged by appellant is that in 5-218, or three years, because while 5-222[5] is interposed it would not seem applicable, and appellant has cited no authority to the effect that it is. Appellant, however, contends the respondent had constructive notice because all of these proceedings were of public record in the office of the city clerk. Paragraph two of 49-2726, supra, is the one under which relief is sought and claimed. If the respondent is charged with constructive notice, so is the city, which, as to such districts, is a trustee. (*Wheeler v. City of Blackfoot*, 55 Ida. 599, 45 Pac. (2d) 298; *Cruzen v. Boise City, supra.*) To what extent, the city clerk being a city official and of course having actual notice, the city is thereby charged with actual notice we need not determine. The city certainly had as much constructive notice as the purchaser of the bonds. Likewise, the property owners had as much constructive notice as the purchaser of the bonds. The mistake was either mutual or distinct; the statute (49-2726) makes no distinction. Hence herein the cause of action did not accrue until the bondholder had actual notice of the deficiency in the assessment existing at the time the bonds were sold. (5-218 I. C. A.; *Weil v. Defenbach*, 31

---

[4] *Blackwell v. Village of Coeur d'Alene*, 13 Ida. 357, 90 Pac. 353; *Meyers v. City of Idaho Falls*, 52 Ida. 81, 11 Pac. (2d) 626; *Oregon Short Line Railroad Co. v. Berg*, 52 Ida. 499, 16 Pac. (2d) 373; *Cruzen v. Boise City*, 58 Ida. 406, 74 Pac. (2d) 1037.

[5] "5-222. Actions on open accounts—Accrual of cause.—In an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action is deemed to have accrued from the time of the last item proved in the account on either side."

Ida. 258, 170 Pac. 103; *W. G. Jenkins & Co. v. Standrod,* 46 Ida. 614, 269 Pac. 586.)

The ordinance authorizing the issuance of the bonds pledged the good faith of the city in the carrying out of its duties in connection with the district, and that all steps had been properly taken, which necessarily included a valid and sufficient assessment roll, because it is apparent from even a superficial study of the statutes providing for local improvement districts that there shall be in existence at the time of the issuance of bonds a face value assessment at least equal to the amount of the bonds issued. These recitals in the ordinances and bonds should be of some effect. (*Burger v. Calek,* 37 Ida. 235, 215 Pac. 981; *Detroit Fire etc. Ins. Co. v. Sargent,* 42 Ida. 369, 246 Pac. 311; *Goody v. Maryland Casualty Co.,* 53 Ida. 523, 25 Pac. (2d) 1045; *Cuddy v. Sturtevant,* 111 Wash. 304, 190 Pac. 909; *City of McLaughlin v. Turgeon,* 75 Fed. (2d) 402.)

Four different parties are interested in and affected by the issuance of local improvement bonds: the city and the general taxpayers therein, because while not directly nor as such responsible for the payment of any of the indebtedness, contingent liabilities, based upon improper actions of the city, may materialize and result in consequent financial loss to and enforced contribution by the general taxpayers. (*Wheeler v. City of Blackfoot, supra.*) The bondholder and the property owner within the district are those most vitally interested—the bondholder desirous that within the limited scope of this type of security he may receive that to which he is legitimately entitled, and the property owner that the strictly limited obligation as against his property be not enlarged. It is apparent, however, that the legislature intended by section 49-2726 to provide that under certain factual circumstances a reassessment could and should be imposed upon the property owner within such districts to make good a deficiency occasioned by mistake or inadvertence. All that we are required to hold as a matter of law and all that we do hold is that the circumstances detailed above constitute, under the applicable statutes made and provided, a sufficient cause by mistake or inadvertence to

justify the imposition of the reassessment required herein by the judgment of the trial court. No actual additional charges are thus imposed upon the property owners because until the principal as assessed is paid it remains a charge, the inopportune assessment in June, 1928, was not paid on the bonds but was used to pay warrants. The property owners received the benefit of the delay in payment and of the improvement and are charged equally with the bondholder with notice of the law that in the event of mistake or inadvertence reassessment may ensue. The property holder is charged with a duty at least equal to the bondholder to see the law is complied with. (*Henning v. City of Casper*, 50 Wyo. 1, 57 Pac. (2d) 1264.)

"If an individual would give money to another in return for a supposedly valid obligation in writing, and the written instrument should turn out to be invalid, no court would hesitate an instant in making recovery possible. Principles of justice and honesty fundamentally apply to individuals, municipalities, states, and Nation alike, and should be applied alike, unless constitutional or statutory provisions forbid. Municipalities, it is true, are creatures of the Legislature and have only such powers as are granted them, and cannot do the things prohibited by law, as we held in the first part of *Tobin v. Town Council*, 45 Wyo. 219, 17 P. (2d) 666, 84 A. L. R. 902. But courts ought not, and will not, according to the weight of authority, go too far in brushing aside principles of justice and honesty, and this fact was recognized by us in the second part of *Tobin v. Town Council, supra*. To give cities to understand that if they can get some one to buy worthless bonds, the purchaser may go and find his money where he can, and that upon them or their officers rests no duty whatever, does not sound like a salutary rule. Of course, if the city and its officials fulfill their duty in connection with special assessments, nothing further can be expected of them; the contract between the parties, or the statute limiting liability, must then govern, and the city is relieved from any liability, even though there may be a deficiency in the amount collectible."

In *Lucas v. City of Nampa*, 41 Ida. 35, 238 Pac. 288, relied upon by respondent, the facts were entirely differ-

ent and the court was not considering such a reassessment as sought herein nor on comparable grounds. Nor was there any such mistake or inadvertence as herein occasioning a deficiency in the assessment roll, and such case is clearly not in point.

The purpose, intent, and applicability of the two paragraphs of 49-2726 is to be kept in mind and is important. The first paragraph is for the correction of errors in law and the second factual defects. (*United States v. John K. & Catherine S. Mullen Benev. Corp.,* 63 Fed. (2d) 48.) This distinction is more noticeable or at least more specifically indicated because of the fact that in our statute the two provisions are and were as originally passed by the legislature in separate paragraphs, hence, the terms cause, mistake, or inadvertence in the second paragraph of our statute may not be construed as referring to the defects in the first paragraph. As applied to paragraph two and controlling herein the correct rule is that culminating in the last paragraph in *Loveless v. City of Chehalis,* 133 Wash. 33, 233 Pac. 301:

"Under the above decision there can be no restoration of the lien against the four lots sold by the county, for the special assessment, nor can they be reassessed. The question then remains whether the remaining lots in this local improvement district can be reassessed for the amount of appellant's bonds.

While it is true that the total assessment, together with the cash paid, equaled the total cost of the improvement, or $5,000, as asserted by respondents, it evidently did not equal the total actual cost and expense of the improvement together with accrued interest thereon as provided by section 7892-43 supra. Had the assessments so been provided for the payment of the bonds, first maturing in the local improvement district, or those numbered from 1 to 32, inclusive, could not have exhausted the fund.

The statute relating to such local improvement districts, section 9407, Rem. Comp. Stat., does provide that the bonds shall be called in and paid in their numerical order, and another section (9400) relating to the assessments provides that:

'Such bonds shall not be issued in any amount in excess of the cost and expense of the improvement.'

But it is a fact that, regardless of the loss of the $499.13 with interest on the four lots seized by the county and sold for general taxes, there was a deficit in the amount assessed on the property which would be required to satisfy the amount of the bonds and interest on the total cost of the improvement. There was some $56.15 paid by some of the owners of the four lots sold by the county, as interest, to be deducted from the total accumulation of interest amounting as stated to $349.49, leaving a balance of interest accumulating on the property of $239.24 for the ten-year period. This, added to the principal which they failed to pay, would total $792.37. This, deducted from the face of the bonds held by appellant, leaves a balance of $107.63 principal.

\*     \*     \*     \*     \*     \*     \*     \*

We conclude that the only relief appellant can now have is that the remaining property in the district, exclusive of the four lots in question, must be reassessed by the city for the payment of the deficit of $107.63, with interest from the date of the maturity of appellant's bonds."
not in *State v. City of Vancouver,* 160 Wash. 655, 295 Pac. 947, or *State v. City of Dayton,* 200 Wash. 91, 93 Pac. (2d) 909. The last two cases failed to note the distinction or give effect to it, and we cannot follow them as authority for the proper construction of paragraph two of our statute, which clearly covers situations different than contemplated by paragraph one. See further 44 C. J. 771; 5 McQuillin on Municipal Corporations, 2d Ed., p. 860, sec. 2281.

In *Reynard v. City of Caldwell,* 53 Ida. 62, 21 Pac. (2d) 527, bondholders of a local or special improvement district sought to enforce assessments made against municipally owned property adjoining the streets improved. The court held that such assessments could not thus be enforced but that as construed in *Reynard v. City of Caldwell,* 55 Ida. 342, 42 Pac .(2d) 293, where reassessment was sought, the public's share of such local improvement expense should be paid out the general fund. In the latter

case the court further held a reassessment was not justified, because of the above situation nor because certain street railways whose lines extended along the streets improved and had been assessed in connection with the district, failed and refused to pay their full assessment, holding that such traction companies were properly assessed and their failure to pay did not justify a reassessment against the other property owners in the district. Thus neither of these cases is in point in any particular herein, since there are no questions of any municipally owned property and respondents seek no reassessment because of the failure of the property owners in the district to pay assessments levied against their property.

Respondent's second cause of action is to recover unpaid and uncollected interest amounting to $3220.20. The city clerk, after the negotiation of the bonds, set up gratuitously what was called an installment or deferred assessment roll. There was no provision in the statute or ordinances for the same; and the clerk computed the interest which should be collected to amount to $5125.74, whereas the proper amount should have been $8345.94. While the city council in ordinance No. 1502 provided for levies to be made during the ten year life of the bonds, no annual levies were made by the council as required by statute. The clerk merely sent out notices based upon her estimates as above indicated. Appellant's counsel asked what more could have been done if the council instead of the clerk had made the annual levies. While not necessarily material who made the levy, since the deficiency is because not enough was levied, if the council had made the levies required by law, they might have discovered the mistake sooner and thus uncovered the clerk's embezzlement of funds from this district and thus perhaps have avoided enforced contribution by the city of $2585.81 from some source, occasioned by the clerk's defalcation. The loan, if we may euphemistically call it that, which the clerk surreptitiously abstracted from the Treasurer's Investment Fund, to this district of $969.93, was illegal and jeopardized the city and the general taxpayer. (*Wheeler v. City of Blackfoot, supra.*) The imposition of the amount of interest sought by respondent is clearly

justified under section 49-2721 as construed in *Veatch v. City of Moscow, supra.* See also *McDonald v. Pritzl,* 60 Ida. 354, 93 Pac. (2d) 11.

Respondent having a clear, legal right to the relief sought, mandamus is the proper remedy. (*McDonald v. Pritzl, supra; Smith v. Boise City, Idaho,* 104 Fed. (2d) 933; *Cowan v. State,* 55 Wyo. 427, 100 Pac. (2d) 427.) Section 49-2725 does not afford a plain, speedy, and adequate remedy because no assessments made have been uncollected. Respondent's first cause of action accrued when the mistake was discovered, and ensuing suit was within the statutory period. As to the first cause of action the mistake was of such a nature as to justify relief under 49-2726 I. C. A. (*People v. Pierce,* 171 N. Y. S. 772.) The fault as to the second cause of action was in the failure of the city to *levy* the necessary annual interest charges.

The judgment is affirmed. Costs awarded to respondent. Budge, Morgan, Holden, and Ailshie, JJ., concur.